## MARY C. JERVIS

*vs.*

## CHARLES' A. JERVIS ET AL.

*Deeds*: *voluntary; prima facie void; burden of proof; effect of—; when presumption overcome.*

While a gift obtained by any person standing in a confidential relation to the donor is *prima facie* void, and the burden is thrown on the donee to establish to the satisfaction of the court that it was the free, voluntary and unbiased act of the donor, yet when that burden is discharged, and there is no question of capacity or undue influence, a court will not strike down a voluntary deed merely to gratify the caprice of the grantee, or because of subsequently changed relations between the parties.

pp. 138-139

*Decided December 1st, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert F. Leach, Jr.* (with whom was *John B. Keplinger* on the brief), for the appellant.


*W. Thomas Kemp* (with whom was *Edwin J. Griffin* on the brief), for the appellees.


BRISCOE, J., delivered the opinion of the Court.

This is a bill in equity, to annul and set aside a deed of trust, executed on the 9th day of March, 1909, by the appellant, the widow of James Jervis, late of Baltimore City, deceased, to the appellee, Charles A. Jervis, as trustee, for certain purposes and trusts, specifically set out, in the deed.

The bill was filed on the 15th day of September, 1914, and in substance alleges, that the deed is without legal consideration, is fraudulent and void; that it was and is not her act and deed, because she was induced to believe at the time it was executed by her, that it was only for the purpose of properly administering and distributing her husband's estate, and that she at no time ever contemplated depriving herself of the interest, in her husband's estate as by the contents and purport of the deed, she has done. That unless the deed is vacated and annulled she will be deprived of all her rights, and property of every sort, to which she is entitled as the widow of her deceased husband, under the laws of the State, and cause a great hardship, injustice and wrong upon her.

The defendants, the trustee and the four grantees in the deed, are the children of James Jervis, deceased, the husband of the grantor by a former marriage, the appellant not having any children.

James Jervis, the husband, died intestate on February 26th, 1909, leaving surviving him the appellant, his widow and the defendants, who are his children by a former wife, as his only heirs at law.

The answer of the defendants denies the charge and allegation of fraud and misrepresentations upon which the plaintiff relies to obtain the relief sought by the bill, and avers that

the deed was made voluntarily and executed by the plaintiff of her own free will, without any fraud, misrepresentation or undue influence whatsoever, with full knowledge of the contents and purport thereof, and was for a good and legal consideration, and is the lawful and valid deed of the plaintiff.

The property conveyed by the deed consists of the plaintiff's one-third interest as widow, which she received from her husband's estate, amounting to $4,933.27, and distributed to her, by the first administration account, in the settlement of the estate in the Orphans' Court of Baltimore City.

By the deed, all of the grantor's property, of every kind and nature, is conveyed, in trust and confidence, for the uses and purposes and to the persons named therein, as follows:

"In trust to take over, collect, receive and hold all of said property and estate, moneys, credits, securities and evidence of debts and to pay over the rents, income, interest, revenue, profits and benefits thereof and therefrom, after paying the expenses of said property and of this trust to said Mary Jervise so long as she shall live, and from and after the death of said Mary Jervis the said Trustee shall pay and satisfy all her funeral charges and expenses (her burial to be made in Cedar Hill Cemetery, Anne Arundel County, Marylond, Lot 95, area H, sides of grave from the bottom to the height of casket or coffin to be lined with hard brick with a covering of stone slabs no box or wood covering to be used) and said Trustee shall make provision and pay for the perpetual care of said cemetery lot. And in further trust from and after the death of said Mary Jervis as to all other parts residue and remainder of said trust estate and property the same shall go to and become the property and estate in equal shares (one-fourth to each) of Ella F. McNally Cora Busick Charles A. Jervis and John E. Jervis the four children of the said James Jervis (late husband of said Mary Jervis). And should any of said children die before the death of said Mary

Jervis then the share of the one so dying shall go to his or her heirs and legal representatives *per stirpes*. And the said Charles A. Jervis Trustee as aforesaid is hereby authorized and empowered prior to the death of said Mary Jervis whenever to the said Trustee it may seem to the benefit of the said trust or of the beneficiaries thereof from time to time to sell and dispose of said trust estate and property or any part thereof for the purpose of changing, altering and reinvesting the same and the purchaser or purchasers shall not be required to see to the application or reinvestment of any purchase money."

The prayer of the bill is that a decree be passed annulling and vacating the deed in question and for general relief.

The case was heard upon bill, answer and proof in the Court below, and from a decree dismissing the plaintiff's bill this appeal has been taken.

At the trial of the case, there were three witnesses examined upon the part of the plaintiff and six produced by the defendants, but we shall not refer in detail to their testimony, but shall state the conclusions we have reached after a very careful consideration and examination of the record now before us.

The case briefly stated is this: The appellant is a widow, without children. She is on or about sixty years of age, and married the father of the appellees in 1879. After the marriage she lived with her husband and his children at their home, 1105 Battery avenue, in Baltimore City, where her husband conducted the business of making oyster knives. Upon the death of her husband, in 1909, she continued to live at this home which belonged to the appellees until some time in 1913, when she left, and since that date boarded with her sister, Mrs. Rebecca L. Nevilles, her only near relative. The trustee has continued to pay her board and to otherwise care and provide for her while with her sister from the income of the trust estate. Shortly after living with her sister

she changed her attitude and relation towards the appellees, and without notice to the trustee instituted these proceedings to vacate and set aside the deed for the alleged reasons stated in the bill.

It appears that from March 9th, 1909, the date of the deed, until September 5th, 1914, the date of the filing of the bill, she received the income from the trust estate, accepted the care and attention of the trustee and the Jervis family without objection and with apparent satisfaction.

It is admitted that she was an illiterate woman, unable to read and write, could not count money and did not appreciate its value. There is no question raised as to her mental capacity, and it is practically conceded that at the time she executed the deed she was entirely capable of making a valid deed or contract.

She owned no property of her own, and her husband in his lifetime frequently expressed to his children great anxiety and solicitude for the care and maintenance of his wife. From certain memoranda found among his papers, after his death, he thus expressed himself, "As my wife can not read or write, I wish it so arranged that some person to pay my wife a sum weekly."

The deed of trust was prepared by the family attorney, after a family conference, and the proof shows that the disposition of the property was not only such as she voluntarily determined to make, but according to the expressed wish of her husband that her property should be "so arranged" that she would be protected in its use and have the benefit of it in her lifetime.

The deed was read to her and its provisions explained in detail, not only at a family conference but by the Justice of the Peace before whom she signed and acknowledged it. It was executed in the presence of the family and her mark was witnessed not only by the Justice of the Peace, but by another who was present for the purpose. All of the defendants' witnesses testified that the deed was read and explained

to her; that she understood its contents; that it was "what she wanted," and that she was perfectly satisfied with its provisions.

The witness Butler, who heard the deed read to her on two occasions, tetified: "Q. Now, when the Justice of the Peace came did he read the deed to her? A. Yes, sir; he read it the second time. Q. Did he explain it to her? A. Yes, sir. Q. Was she satisfied? A. Perfectly satisfied, and afterwards came on the outside and crowed about it—pardon me for using the slang—bragged about it, and said, Now, Charlie will look after me for the rest of my life."

The plaintiff, we think, has failed to establish the charge of fraud, misrepresentation or undue influence made in her bill. The evidence, on the contrary, shows that the execution of the deed was the free and voluntary act of the grantor, with a full knowledge of its contents and a full understanding of its provisions.

We can discover nothing in the proof or in the decisions of the courts, upon the facts of this case, that would justify a court in striking down this deed.

The legal principles applicable to cases of this character have been announced and considered in a number of recent cases in this Court. In *Reed* v. *Reed,* 101 Md. 141, it is said: "A gift obtained by any person standing in a confidential relation to the donor is *prima facie* void, and the burden is thrown on the donee to establish to the satisfaction of the Court that it was the free, voluntary and unbiased act of the donor. This means, however, that if it was the free and voluntary act of the donor, a gift deed is as good as any other and must be measured by the same standard. It won't do to make such a conveyance, and, because the grantor should subsequently regret it, to come in and ask the Court to undo the act so deliberately done. Let the grantee once discharge the burden imposed upon him and overcome the *prima facie* case, the Court would never strike down the deed either to gratify the caprice of the grantor or because

subsequently thereto the relations of the parties changed."
*Bauer* v. *Bauer,* 82 Md. 244; *Rogers* v. *Rogers,* 97 Md. 573;
*Kensett* v. *Safe Deposit and Trust Co.,* 116 Md. 530; *Henry*
v. *Leech,* 123 Md. 446; *Von Buchwaldt* v. *Schlens,* 123 Md.
409; *Brown* v. *Fidelity Trust Co.,* 126 Md. 176.

Our conclusion, therefore, is that the defendants have fully
met the burden of proof required of them in this case, and
that the deed was the free, voluntary and deliberate act of
the grantor, and there being no sufficient evidence to sustain
the charge of fraud and misrepresentation alleged in the
bill, the decree of the Court below must be affirmed.

The execution of the deed in this case was undoubtedly for
the benefit and protection of the grantor, and we have no
difficulty in holding under all the facts and circumstances as
disclosed by the record that it was a proper and righteous
transaction.

As was said by this Court in *Rogers* v. *Rogers, supra*:
"Protection against oneself is sometimes more needed than
against others, and when this is shown to be the case, it is
our duty to extend to it if we can lawfully do so."

> *Decree affirmed, costs to be paid out of the corpus*
> *of the trust estate.*