GERTRUDE R. KEMPER *v.* ARTHUR S. RAFFEL,
ET AL.

[No. 85, October Term, 1935.]

*Decided January 16, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Emanuel Gorfine,* with whom were *Louis M. Silberstein, Joseph Skrentny,* and *Silberstein & Gorfine,* on the brief, for the appellant.

*Edward L. Putzel,* with whom was *August Levene* on the brief, for the appellees.

SHEHAN, J., delivered the opinion of the Court.

Gertrude R. Kemper, appellant in this case, filed a bill of complaint in the Circuit Court of Baltimore City against Arthur S. Raffel and August Levene, and by amendment Herbert Kemper and Jay Kemper, infants, were added as parties defendant to the bill and are appellees herein.

It is alleged that, while the appellant was sick and depleted mentally and physically, she was induced by her brother, Arthur S. Raffel, and August Levene, to execute a deed of trust transferring to them as trustees about $16,000 to which she was entitled, and was about to receive, out of the estate of her mother. She alleges that at the time the deed of trust was signed she was unable to withstand the importunities of her brother, Arthur S. Raffel, and August Levene, and she did not know and understand the contents thereof.

The questions presented for consideration are: The capacity of the appellant to understand or to know the contents of the deed, and its effect, because of her weakened mental and physical condition, growing out of an illness from which she had suffered for a considerable length of time; and undue influence alleged to have been practiced upon her by her brother and Mr. Levene, his friend and advisor. There is also a question of confidential relations and its bearing upon the questions above recited. We have, too, the question of the ratification of the deed by Mrs. Kemper, through her approval of the deed of trust by receiving benefits.

In this case the question of confidential relations is of small importance, because those who interested themselves in the execution of the deed of trust obtained no benefits; in fact, the husband was the loser as to his prospective interest in his wife's estate.

Mrs. Kemper's brother and August Levene were apparently unselfish and in no manner profited in consequence of the deed. These men were named trustees.

In the case of *Von Buchwaldt v. Schlens*, 123 Md. 405, 91 A. 466, 468, this court said, referring to the rule as to confidential relations, that "the statement of the above rule obviously limits its application to cases in which the person holding the position of influence obtains some benefit from the person subject to the influence, and where no such benefit is procured there is no reason why a court of equity should regard the transaction with such jealous scrutiny, or impose upon the grantee in a deed of trust the burden of showing that it was the free, voluntary, and unbiased act of the grantor," and it has been held that the expectancy of obtaining commissions as trustees is not such a benefit as will shift the burden of proof as to the validity of the deed and place it upon the trustees. *Rogers v. Rogers*, 97 Md. 573, 585, 55 A. 450. In *Brown v. Mercantile Trust & Dep. Co.*, 87 Md. 377, 392, 40 A. 256, 258, it is stated: "The law regards such commissions as compensations for services rendered, and not as a benefit granted by the deed."

In view of the decided preponderance of the testimony, it is clear that the doctrine of confidential relations is not controlling in this case. We may go further and say that the doctrine of confidential relations cannot be invoked here, because the evidence clearly shows that there was not that sort of persuasion or influence that could possibly have induced the appellant to have executed the deed of trust, contrary to her understanding and to her wishes, at the time the deed was made.

Mrs. Kemper was a young married woman with two children, ten and eleven years, respectively, and in De-

cember, 1934, she expected to come into possession of a considerable sum of money that had been left to her under the will of her mother. The making of a deed of trust with respect to this money was not a new question for her consideration. That plan seems to have originated with her. She had been considering this for about a year, and in pursuance thereof she had several conferences with Mr. Douglas H. Rose of the Fidelity Trust Company with regard to the execution of a deed of trust. Mr. Rose had given her information and advice and had drafted suggestions or proposals relating to the form of deed and its terms and conditions. In the evidence there is nothing to show that the making of the deed of trust was originally suggested or urged upon her by others, and when the time finally arrived when a definite decision was to be made with regard to the execution of a deed and the terms and conditions thereof, it was not a new proposition, but rather the fulfillment of plans that she had previously had in mind.

In the fall of 1934, Mrs. Kemper, actuated by her desire, went to the Hopkins Hospital for observation and such treatment as was necessary. It seems that for some time she had believed an operation to be necessary, and desired that it be performed. Her treatment there was intrusted to Drs. Rennie and Cameron, physicians connected with that medical institution. Mrs. Kemper, her husband, her brother, Mr. Arthur S. Raffel, Dr. Rennie, Dr. Cameron, and Mr. August Levene held a conference on October 11th, 1934, which seems to have been arranged out of solicitude for Mrs. Kemper and her children. Any appearance of undue influence or selfish designs upon the part of those who have been charged with overpowering "importunities" was totally lacking. On the contrary, her relatives and her doctors, who were advising her and looking after her needs and comforts, clearly had in mind her welfare and happiness, and desired to protect her against her own improvidence in dissipating her money by spending beyond her means. Neither Dr. Rennie or Dr. Cameron are charged in the bill or in the testimony

with importunities to execute the deed. It is her brother and Mr. Levene who are specifically charged with "importunities" that under the circumstances she was unable to withstand. The evidence does not support the allegation or satisfy the legal requirements necessary to establish undue influence, as defined by this court.

"The influence which the law condemns as undue is that which is operative to such a degree as to amount in effect to coercion. * * * 'It must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of the testamentary act.'" *White v. Bramble,* 124 Md. 395, 400, 92 A. 763, 765. The testimony of her relatives is clear as to her lack of discretion in the use of money. She seems to have been one of those persons who has no idea of conserving her means and little judgment in spending. She was characterized as a "spendthrift," and one who would buy a "gold brick." These were the reasons that impelled her near and solicitous relatives in undertaking to safeguard her against her own improvidence, and there may be here repeated what has been said by this court in the case of *Jervis v. Jervis,* 127 Md. 133, 96 A. 265, 266: "The execution of the deed in this case was undoubtedly for the benefit and protection of the grantor, and we have no difficulty in holding, under all the facts and circumstances as disclosed by the record, that it was a proper and righteous transaction." That case has great similarity in facts and circumstances to the instant case.

In the case of *Rogers v. Rogers,* 97 Md. 573, 55 A. 450, 456, this court said that "protection against one's self is sometimes more needed than against others, and when this is shown to be the case, it is our duty to extend it, if we can lawfully do so." This statement is peculiarly applicable to the instant case, for it does seem that Mrs. Kemper needed more protection against her own improvidence than she did against others. The verity of the claim that her mental and physical condition were such as to deprive her of a clear understanding of the char-

acter and effect of the deed of trust can best be judged by the testimony of those who were employed to examine, consider, and determine pathologically her condition, and were best able to perform this service.

Dr. Rennie and Dr. Cameron are both eminent physicians. Dr. Rennie was the resident psychiatrist at Phipps Clinic. He testified, "in my opinion she was quite capable of executing a valid deed and contract on October 12th, 1934" (the date of the deed), and that he based this opinion upon examinations carried out between September 15th and October 12th, 1934, while Mrs. Kemper was in the clinic. He further stated that she was in a considerable amount of pain and distress, but that he did not believe she was in sufficient distress to in any way affect her intelligence or judgment in executing the deed. Dr. Cameron testified as follows: "Q. Do you recall, doctor, what her physical and mental condition was, so far as you know when this conference occurred? A. Do you mean in reference to her ability to sign a contract? "Q. Yes, sir. A. I considered it adequate at that time, completely adequate."

The testimony of members of the family indicate that, at the time of the execution of the deed, she was not in a physical or mental condition that would preclude her from understanding what she was doing. The deed of trust was carefully prepared in accordance with her wishes and assent, was presented to her, was read by her and explained, and every opportunity was afforded her to inform herself as to the nature and contents of the instrument, and to be advised as to its legal effect. The contentions of the appellant as to her mental capacity, her physical discomfiture, and undue influence are not sustained by the evidence. For the reasons above stated the contentions as to confidential relations are not well founded. The imputation in the testimony of the appellant that the execution of the deed was a result of an understanding whereby she was to have the desired operation performed in consideration of the execution of the deed, or the oper-

ation would not be permitted unless she signed the deed of trust, is not supported by the testimony. The circumstances in this case and the direct testimony do not warrant such an inference or conclusion. The learned chancellor characterized it as "perfectly incredible" and "inconceivable." We cannot give any serious consideration to that testimony or rely upon it, in view of all the other evidence in the case.

In view of what has been said, the question of ratifying the deed need not be considered at great length. Mrs. Kemper soon became dissatisfied with the deed that she had made. This is not surprising, in view of her temperament and her propensities for spending money, as testified. We may fairly assume that she soon realized that by operation of the deed this $16,000 placed in the hands of the trustees was beyond her reach and power to spend. Nevertheless, on the 5th of December, 1934, she, together with her husband and the trustees named in the deed, executed a release to the executors of her mother's estate, so that the money might be paid to the trustees in accordance with the provisions of the deed of trust, and also accepted payment of the $500 as provided in the deed. She indorsed and cashed the check given for this sum. This was long after she had left the hospital, and nearly two months after she had executed the deed of trust.

In the case of *Long v. Long,* 62 Md. 33, 71, Judge Alvey said: "They knew and recognized in Mr. Pennington the character of trustee, and that he held that character under the decree of Baltimore County Court. And with this knowledge, if they had not been disposed to acquiesce in the conversion of the property, they should have declined accepting the money from the trustee, and asserted their claim to the property without unreasonable delay." This statement applies with equal force to the instant case, but, as it is our opinion that the deed of trust is a valid and subsisting instrument, it therefore required no subsequent approval or ratification. For the reasons above

stated, it is the opinion of this court that the decree from which this appeal is taken must be affirmed.

*Decree affirmed, costs to be paid out of the corpus of the trust estate.*