Laverne ROBERTSON, Darlene Olsen and Eldon M. Johnson, Plaintiffs and Appellants,

v.

Thora J. CAMPBELL, Defendant and Respondent.

No. 17504.

Supreme Court of Utah.

Nov. 2, 1983.

George K. Fadel, Bountiful, for plaintiffs and appellants.

Ann Wasserman, Michael N. Emery, Salt Lake City, for defendant and respondent.

STEWART, Justice:

In a probate action prior to this suit, a will executed by Marinus Johnson, father of both the plaintiffs and defendant, was held invalid by reason of undue influence. The will devised and bequeathed to Thora J. Campbell a disproportionately large share of her father's estate. Plaintiffs, who are a brother and sisters of Thora Campbell, subsequently filed this action when they learned that their father had conveyed a large part of his estate to a trust, which was executed at the same time as the will, and which divided the property in the same manner as the will did. In this case, plaintiffs attack the trust on the same ground as the will, i.e., that it too was produced by their sister Thora's undue influence. They assert that the prior judgment holding the will invalid because of undue influence by Thora is determinative of the issue of undue influence as to the trust. The trial court rejected this argument and, on the ruling that plaintiffs had failed to meet their burden of proof, dismissed the suit on defendant's motion at close of plaintiffs' case in chief.

## I. THE FACTS

During his life, Marinus Johnson was a rancher who owned large real estate holdings in Juab, Millard, and Salt Lake Counties. His estate also included substantial personal property comprised of equipment and stock.

Before he died, Marinus executed four wills. His first will, executed August 20, 1964, left all his property to his first wife. Her death in July, 1968, necessitated a second will. The second will, executed May 5, 1969, was drawn up at Marinus' request by an attorney who had handled his legal affairs for some fifteen years, and left $500 to his second wife, with the remainder of his property to be apportioned among his four children in equal shares. That will named his daughter Thora executrix. She had assisted him with his business dealings through the years and was familiar with his holdings.

Over a year later, when Marinus was approximately 74 years old and apparently still living with his second wife, Thora took Marinus to a law firm which had not previously handled Marinus' affairs, but had handled her affairs. There a new will with a different property distribution was executed. This will (the third), executed January 19, 1971, left the same amount of money to his second wife, $500, and reduced his son Eldon's share from an equal one-fourth of the estate to only $2,500. Thora was singled out to receive all the Juab County property (constituting the major part of the real property) and all the stock. The residue of the estate was to be divided into three parts, with one half to Thora, and one fourth each to LaVerne and Darlene. Thora was designated executrix.

The fourth will and the trust instrument at issue in this case were executed almost two months later on March 5, 1971. The will and trust were prepared, again with assistance from Thora, by the same law firm that prepared the third will, and those documents made the same disproportionate distribution of the estate as the third will. The trust was intended to be effective upon execution, and Marinus conveyed several parcels of real property to the trustee simultaneously with the execution of the trust agreement. The agreement directed that the trust income be paid to Marinus during his life and called for a distribution of trust property upon his death in the same manner as specified in the third will.

The fourth will referred to the terms of the trust agreement. Both contained the same provisions for the disproportionate

distribution of property among the children as in the third will. At Marinus' death, the fourth will was to pour over into the trust the residue of his estate not previously transferred to the trust by inter vivos conveyances. Thora was again named executrix.

In approximately September, 1974, Marinus moved into Thora's home, apparently for health reasons. While there, he conveyed more property into the trust, and did so at least as late as October, 1975. On December 29, 1975, at the age of 79, he died.

A probate dispute arose among the children as to which will should be probated. Daughters LaVerne and Darlene petitioned for probate of the second will, which provided for an equal distribution of the estate among all four children. Thora objected to probate of the second will, arguing that it had been revoked by the subsequent wills, and she petitioned for the admission of the fourth will to probate. The primary issue put to a jury was whether the two 1971 wills (the third and fourth), which revoked the second will, were the product of undue influence exerted by Thora over her father, Marinus. On special interrogatories the jury found that Marinus acted under undue influence in executing the wills of January 19, 1971, and March 5, 1971. Accordingly, in March, 1978, the probate court declared the third and fourth wills invalid by reason of undue influence and entered a decree that the testamentary estate should be distributed according to the terms of the second will.

The effect of that decree on the distribution of the total estate was minor, however, as almost all the decedent's property had already been transferred by inter vivos conveyances into the trust. Only a small residue of the estate was left to pass under the terms of the second will. That, apparently, is the reason why Thora has now abandoned her appeal from the decree in the probate proceeding and why the present lawsuit was filed to set aside the trust.

LaVerne, Eldon, and Darlene filed the instant action against their sister Thora in July, 1978. The complaint alleged that the "trust agreement and all transfers, assignments and conveyances in relation thereto are invalid" by reason of undue influence exercised by Thora over Marinus. The complaint then listed those challenged conveyances, including those made at the time of the execution of the trust on March 5, 1971, as well as those made subsequently, thus placing them all in issue. Plaintiffs sought to have the trust and all related conveyances set aside so that the entire estate could be distributed equally according to the second will.

At the nonjury trial on the validity of the trust, plaintiffs contended that the prior probate judgment constituted a conclusive determination of the issue of undue influence in the creation of the trust. Alternatively, plaintiffs argued that Thora's confidential or fiduciary relationship with her father and her disproportionately large share of the inheritance created a presumption of undue influence which she failed to overcome. Defendant took the position that collateral estoppel did not apply because the two cases dealt with different issues. That is, the issue in the first case was the validity of the will; whereas in the instant case the issue is the validity of the trust. Defendant further argued that any presumption of undue influence, if one did arise, was rebutted by plaintiffs' own evidence. Defendant also maintained that even assuming undue influence on the day the trust was created, Marinus' subsequent transfers of property into the trust ratified the trust and its terms from its inception.

The trial court rejected plaintiffs' argument that the prior probate judgment was a conclusive determination on the issue of undue influence in the creation of the trust. The trial court's relevant findings were that "[t]he trust agreement and conveyances in connection therewith were not the product of undue influence exercised over Marinus Johnson by the defendant, or anyone," and that "[d]efendant did not stand in a fiduciary capacity as to Marinus Johnson." The court concluded that "the trust agreement and all conveyances made in connection

therewith were, and are, valid." The court therefore dismissed plaintiffs' claims.

The plaintiffs contend that the trial court erred in ruling that (1) Thora was not collaterally estopped by the finding of undue influence in the will case, (2) she did not stand in a confidential relationship with her father, and (3) the acts of alleged ratification of the trust were not the result of undue influence.

## II. COLLATERAL ESTOPPEL

■ Collateral estoppel is a branch of what once was lumped with other rules under the general doctrine of res judicata. Collateral estoppel is distinct from the rules of bar and merger—other branches of res judicata—in that it precludes relitigation only of issues actually tried in a prior action, and it may be invoked even though the subsequent cause of action is different from the former. *E.g., Schaer v. State,* Utah, 657 P.2d 1337 (1983); *Searle Bros. v. Searle,* Utah, 588 P.2d 689 (1978); *In re West Jordan,* 7 Utah 2d 391, 326 P.2d 105 (1958). *See generally Penrod v. Nu Creation Creme, Inc.,* Utah, 669 P.2d 873 (1983). It is not necessary that the parties who assert collateral estoppel against one who lost the issue in a prior case were also parties to the first action. *Searle Bros. v. Searle, supra.* However, collateral estoppel is also, of course, applicable when there is mutuality. *Taylor v. Barker,* 70 Utah 534, 262 P. 266 (1927). Furthermore, collateral estoppel may be invoked by either the plaintiff or defendant in a subsequent action, regardless of whether the prior suit was at law and the subsequent suit in equity, or vice versa. 46 Am.Jur.2d *Judgments* §§ 446–48 (1969); 50 C.J.S. *Judgments* §§ 691–92 (1947). *See Matthews v. Matthews,* 102 Utah 428, 132 P.2d 111 (1942).[1]

In the instant case the parties in the first and second actions are the same, except perhaps the plaintiff, Eldon Johnson (the record is not clear). Defendant's contention is that collateral estoppel is not applicable because the issue tried and resolved in the first case is not the same as the issue in the instant case. Defendant phrases the issues broadly in claiming that the issues in the two cases are different. Thus, she contends the issue in the first case was the validity of the will and the issue in the second case was the validity of the trust.

■ The applicability of collateral estoppel does not depend on whether the claims for relief are the same. *Searle Bros. v. Searle, supra.* What is critical is whether the issue that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue as that raised in a second suit. *Id.*

The issue in the instant case which was previously litigated against the defendant is whether the defendant exercised undue influence over the deceased at the time of the making of the documents in question. The validity or invalidity of the will was a legal conclusion based on the factual finding of undue influence. The principle stated in *Pickeral v. Federal Land Bank,* 177 Va. 743, 15 S.E.2d 82, 85 (1941) is applicable here:

> [I]t is not the identity of the thing sued for, or of the cause of action, which determines the conclusiveness of a former judgment upon a subsequent action, but merely the identity of the issue involved in the two suits. If an issue presented in a subsequent suit between the same parties or their privies is shown to have been determined in a former one, the question is res judicata [or collateral estoppel], although the actions are based on different grounds, or tried on different theories, or are instituted for different purposes and seek different relief.

*See also Kramer v. Freedman,* Fla.App., 272 So.2d 195 (1973); *Gottschald v. Reaves,* Tex. Civ.App., 470 S.W.2d 149 (1971).

---

1. Collateral estoppel is referred to in § 27 of the Restatement (Second) of Judgments (1982) as the doctrine of issue preclusion. Entitled "Issue Preclusion—General Rule," § 27 states:
   When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

■ A finding of undue influence in the execution of one document collaterally estops relitigation of that issue as to other documents executed the same day. *Leshnick v. Kaltovich,* 9 App.Div.2d 779, 193 N.Y.S.2d 145 (1959), aff'd 8 N.Y.2d 821, 202 N.Y.S.2d 324 (1960); *Hartman v. Deibal,* 306 Ky. 613, 208 S.W.2d 949 (1948); and *James v. James,* 85 Colo. 154, 274 P. 816 (1929), are closely in point. In *Leshnick* the testator executed on the same day a will leaving the bulk of his estate to the defendant, and also two withdrawal slips that allowed defendant, as trustee, to withdraw funds from two trust accounts. In the first action, the will was held invalid due to incompetency and undue influence. In the second action to invalidate the withdrawal slips on the same grounds and recover the trust funds, the court held that collateral estoppel barred relitigation of the issues of incompetency and undue influence decided in the first action.

In *Hartman* the testator executed a will and property deeds on the same day. In the first action, the will was held invalid because of incompetency and undue influence. In the second action to invalidate the deeds, the court relied on the prior judgment as a conclusive determination of those issues. The court reasoned:

> [W]hatever was the unsoundness of the one had to be the unsoundness of the other.... If [the will] died, then its Siamese twin, as represented by these deeds of simultaneity, likewise had to die from the same ailment ....
>
> ... [T]he previous inquiry as to the will covered every possibility of inquiry as to the deeds.... While [the] will and deeds, all simultaneous, were not one single document, yet each one was the alter ego of the other.

306 Ky. at 615, 208 S.W.2d at 950.

In *James* the testator executed a will and bill of sale the same day. In the first action, the will was held invalid, again because of incapacity and undue influence. In the subsequent action to invalidate the bill of sale, collateral estoppel was again applied to those previously adjudicated issues. The court reasoned:

> The bill of sale of personal property, it is true, was not directly involved in that case, and our decision there does not purport to include it. But this bill bears the same date as that of the will. They were made on the same day, and ... *were component parts of the same business transaction.* If the will was void because [of undue influence], it would seem as a matter of logic, and we think it true as matter of law, that the same infirmity attaches to and vitiates the bill of sale ....

85 Colo. at 158, 274 P. at 817 (emphasis added). *See also* Annot., *Judgment Denying Validity of Will Because of Undue Influence, Lack of Mental Capacity, or the Like, as Res Judicata As To Validity of Another Will, Deed, or Other Instrument,* 25 A.L.R.2d 657 (1952); Restatement (Second) of Judgments § 27, comment c, illustrations 7 and 8 (1982).

■ The probate trial between the parties to the instant case resulted in a finding of undue influence in the execution of both the third will and the fourth will, the latter having been executed on the same day as the trust. Since the trust instrument was executed simultaneously with that will and was incorporated into, and called for the identical disproportionate distribution of the estate as the fourth will, the finding of undue influence that required invalidation of the will necessarily requires invalidation of the trust and all related conveyances made into the trust that day.[2] Therefore, relitigation of the issue of undue influence in the second case should have been precluded, and undue influence at the time of execution of the trust established as a matter of law.

2. An objective of collateral estoppel is to prevent duplications in litigation. The two actions in the instant case involved substantial overlap in pretrial preparation, discovery, and evidence offered at trial. These facts also indicate the identity of the issues tried and retried in the two cases, contrary to the policy underlying collateral estoppel. *See* Restatement (Second) of Judgments § 27, comment c (1982).

## III. RATIFICATION OF THE TRUST

■ The second issue on this appeal is whether the property that Marinus Johnson placed in the trust subsequent to his execution of the trust instrument had the effect of ratifying the trust. A trust instrument that is produced by undue influence and is therefore initially invalid may subsequently be validated by the settlor's ratification if the acts of ratification are free from undue influence. *Detroit Bank and Trust Co. v. Grout*, 95 Mich.App. 253, 289 N.W.2d 898 (1980); *Kazarus v. Manufacturers Trust Co.*, 156 N.Y.S.2d 275 (1956), *aff'd on other grounds*, 4 A.D.2d 227, 164 N.Y.S.2d 211, *aff'd* 4 N.Y.2d 930, 175 N.Y.S.2d 172, 151 N.E.2d 356 (1957); *Kemper v. Raffel*, 169 Md. 616, 182 A. 461 (1936); *Vanderlinde v. Bankers' Trust Co.*, 270 Mich. 599, 259 N.W. 337 (1935); 89 C.J.S. *Trusts* § 82 (1955).[3]

Acts which have been held to constitute ratification include a subsequent execution of a will which incorporates the trust, *Vanderlinde v. Bankers' Trust Co., supra;* a partial distribution of trust assets, *Detroit Bank and Trust Co. v. Grout, supra;* the execution of an amendment to the trust instrument, *id.;* the transfer of property into the trust, *Kemper v. Raffel, supra;* the transfer of a remainder interest to the trust, *Kazarus v. Manufacturer's Trust Co., supra;* and an invasion of the trust principal, *id.*

In the present case, the subsequent conveyances of property to the trust were acts which, if not done under undue influence, constituted ratification of the trust. The critical question, therefore, is whether Marinus was subject to undue influence at the time he performed the ratifying acts.

■ In ratification cases where undue influence tainted the execution of a trust, will, or contract, it is presumed that the undue influence also tainted the ratification if the causative elements giving rise to the initial undue influence are such that the undue influence was likely to have continued. "If the undue influence has once been exerted it will be presumed to follow and taint every transaction between the parties thereafter ...." *White v. Palmer,* Okl., 498 P.2d 1401, 1406 (1971).

In *Agner v. Bourn*, 281 Minn. 385, 161 N.W.2d 813 (1968), a daughter and son-in-law unduly influenced an aged mother and father to convey to them the family farm for $35,000, although the true value of the farm was $100,000. The parents moved in with the daughter and son-in-law and depended on them almost totally for their support. Later the father died. The Minnesota Supreme Court ruled that for the period during which the mother lived with the daughter and son-in-law and depended on them for support, there was a presumption of continuing undue influence. As a result of the presumption, the court rejected the argument that the mother had ratified the contract of sale while still living with her daughter and son-in-law by accepting a check in payment. *Accord Union National Bank v. Wright,* 79 Colo. 574, 247 P. 453 (1926); *Vicknair v. Trosclair,* 45 La. Ann. 373, 12 So. 486 (1893). *See generally* 25 Am.Jur.2d *Duress and Undue Influence* § 41 (1966); 13 *Williston on Contracts* § 1627 at 812–13 (3rd ed. 1970).

■ Conversely, when the person initially responsible for exercising undue influence is no longer in a position to do so, it is presumed that the undue influence has ceased. *Detroit Bank and Trust Co. v. Grout*, 95 Mich.App. 253, 289 N.W.2d 898 (1980); *Kazarus v. Manufacturer's Trust Co.*, 156 N.Y.S.2d 275 (1956), *aff'd on other grounds*, 4 A.D. 227, 164 N.Y.S.2d 211, *aff'd* 4 N.Y.2d 930, 175 N.Y.S.2d 172, 151 N.E.2d 356 (1957).

In this case, the jury verdict in the probate action establishes that the trust instrument and the conveyances to the trust made at the time of the execution of the trust were invalid because of undue influence. Because the collateral estoppel effect of the first judgment was not recognized in

---

**3.** This same rule applies to conveyances and contracts. *E.g., Reubsamen v. Maddocks,* Me., 340 A.2d 31 (1975); *Agner v. Bourn,* 281 Minn. 385, 161 N.W.2d 813 (1968); 25 Am.Jur.2d *Duress and Undue Influence* § 41 (1966); Restatement (Second) of Contracts § 380(1) (1981).

the proceeding below, the trial court placed the burden of proof on plaintiffs to prove undue influence with respect to the execution of the trust and the alleged acts of ratification.[4] That ruling was in error because Thora had the burden of proving that the acts of ratification were untainted by undue influence.

Marinus' susceptibility to influence and dependence on the defendant do not appear to have diminished from the time of the execution of the trust and will until his death. After the execution of the trust and will, Marinus moved in with his daughter Thora in September, 1974. He apparently had no independent advice as to the additional conveyances to the trust. He gave the defendant a power of attorney on January 23, 1973, and several of the deeds conveying property into the trust were recorded at the defendant's request. In short, it appears that conditions did not change significantly between the execution of the fourth will on March 5, 1971, and Marinus' death on December 29, 1975, to dispel the presumption.

█ Accordingly, there was at least a prima facie presumption of continued undue influence, and the defendant had the burden of proving absence of undue influence. Utah R.Evid.Rule 14(a); *Agner v. Bourn, supra.* Since the trial court's finding that there was no undue influence with respect to the acts of ratification was premised on an erroneous view of res judicata and the law as to burden of proof, the finding must be set aside.

## IV. CONFIDENTIAL RELATIONSHIP

█ Finally, the trial court found that Thora did not stand in a confidential relationship with her father.[5] This Court has stated, however, that under certain circumstances a parent-child relationship may give rise to a confidential relationship. *Blodgett v. Martsch,* Utah, 590 P.2d 298 (1978); *Johnson v. Johnson,* 9 Utah 2d 40, 337 P.2d 420 (1959). Here, in light of the finding of undue influence required by the doctrine of collateral estoppel, the trial court should consider on remand whether such a confidential relationship might have existed at the time of the subsequent ratifying acts.

## V. CONCLUSION

For the reasons stated above, this case must be reversed. Since the plaintiffs' case was dismissed at the close of its case in chief, the defendant adduced no evidence. In a retrial of the matter, it will be defendant's burden of proof to demonstrate that the alleged acts of ratification subsequent to the execution of the will were not invalid as ratifications because of undue influence.

Reversed and remanded. Costs to appellants.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.

---

4. At the closing of the plaintiff's evidence, in granting the defendant's motion to dismiss, the trial judge stated:

> I don't think I can find from a preponderance of the evidence undue influence.... I don't think [the plaintiffs have] met the burden that a reasonable mind could—I don't think you have put the evidence in there to shift the burden.

5. The doctrine of confidential relations requires that if a confidential relationship is found to exist between two parties to a transaction, and if the superior party (in whom trust has been reposed) benefits from the transaction, then "equity raises a presumption of undue influence and casts upon that party the burden to show affirmatively entire fairness on his part and freedom of the other from undue influence." *Reubsamen v. Maddocks,* Me., 340 A.2d 31, 36 (1975), *quoting Eldridge v. May,* 129 Me. 112, 116, 150 A. 378, 379 (1930) (ellipsis in original omitted).