**Manya ATIYA, M.D., Plaintiff–Appellant,**

v.

**SALT LAKE COUNTY, a political subdivision of the State of Utah; N.D. Hayward, individually and in his official capacity as Salt Lake County Sheriff; David Dangerfield, individually and in his official capacity as Director, Salt Lake County Mental Health; Robert L. Warburton, individually and in his official capacity as Clinical Director, Salt Lake County Mental Health; Joe Culbertson, individually and in his official capacity as Associate Clinical Director; Doug Mottonen, individually and in his official capacity as Director of the Jail Mental Health Unit; Salt Lake County Division of Mental Health, an agency of Salt Lake County; Sherri R. Guyon, individually and in her official capacity as Chairperson, Salt Lake County Career Service Council; Willard J. Homer, individually and in his official capacity as Vice Chairman, Salt Lake County Career Service Council; Robert S. Adams, individually and in his official capacity as Member of the Salt Lake County Career Service Council and Jerry Campbell, individually and in his official capacity as Salt Lake County Attorney, their agents, employees and assigns, Defendants–Appellees.**

No. 91–4033.

United States Court of Appeals,
Tenth Circuit.

March 12, 1993.

Kathryn Collard and Steve Russell of Collard & Russell, Salt Lake City, UT, for plaintiff-appellant.

David E. Yocom, Salt Lake County Atty., and Patricia J. Marlowe, Deputy County Atty., Salt Lake City, UT, for defendants-appellees.

Before TACHA, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and O'CONNOR, District Judge.*

McWILLIAMS, Senior Circuit Judge.

The parties to this appeal have indicated that oral argument is not desired. After examining the briefs and the appellate record, this three-judge panel has also determined that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Manya Atiya, M.D. brought a civil rights action in the United States District Court for the District of Utah against Salt Lake County, a political subdivision of the State of Utah, the Salt Lake County Division of Mental Health, an agency of Salt Lake County, and nine individuals, individually and in their respective official capacities. Jurisdiction was based on 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 1331 and 1343.

The gist of the complaint was that Dr. Atiya, who had been employed by the Salt Lake County Division of Mental Health as a psychiatrist and medical director of the Jail Mental Health Unit at the Salt Lake County Jail, had been discharged from her employment by the Salt Lake County Division of Mental Health in retaliation for her public criticism of conditions at the Salt Lake County Jail. By answer, the defendants alleged that Dr. Atiya had been discharged only after she refused to take a reassignment within the department, at no reduction in grade or pay, and alleged some 26 affirmative defenses.

---

* Honorable Earl E. O'Connor, United States District Judge for the District of Kansas, sitting by designation.

From the complaint, we learn that Dr. Atiya availed herself of certain grievance procedures provided for by Utah statutes and that her charge of improper discharge was heard by the Salt Lake County Career Services Council (hereinafter referred to as the CSC). We also learn from the complaint that, after a hearing, the CSC rejected Dr. Atiya's claim of improper reassignment and discharge, holding that her discharge was in accord with applicable rules and regulations and that neither her reassignment, or her subsequent discharge when she refused reassignment, was in retaliation for her exercise of her right of free speech.

Three of the named defendants, namely Guyon, Homer, and Adams, were the three persons who comprised the CSC. On motion, those three defendants were dismissed from the case on the grounds of quasi-judicial immunity.

The remaining defendants, including Salt Lake County and the Salt Lake County Division of Mental Health, along with the six individually named defendants, four of whom were Dr. Atiya's supervisors at the mental health unit, filed a motion for summary judgment based on collateral estoppel, or issue preclusion. This motion was based on the fact that Dr. Atiya had "grieved" her discharge to the CSC, and lost.

Initially, Dr. Atiya moved to strike this particular motion for summary judgment on the ground that the defendants had failed to plead *res judicata* or collateral estoppel in their answer, and accordingly, it was argued, they could not thereafter move for summary judgment on that ground. The defendants then sought, and were granted, leave to file an amended answer, alleging *res judicata* and collateral estoppel. However, the district court, at the same time, denied the defendants' motion for summary judgment. The defendants thereafter amended their answer to include *res judicata* and estoppel.

Later, the district court, in a pretrial setting, decided to reconsider the defendants' motion for summary judgment, and thereafter, in a 13–page memorandum opinion and order, granted the motion and entered summary judgment for the remaining defendants. In so doing, the district court held that the issue of whether Dr. Atiya had been discharged in retaliation for her public criticism of the mental health facilities at the Salt Lake City Jail had been resolved adversely to her in the grievance proceeding before the CSC, and that she was now precluded from relitigating the issue in her civil rights action in federal court. In thus holding, the district court relied on *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

As stated, three of the defendants, namely Guyon, Homer and Adams, comprised the CSC, which heard and rejected Dr. Atiya's claim of retaliatory discharge. On motion, the district court entered summary judgment in favor of these three defendants on April 5, 1989, on the grounds of quasi-judicial immunity. Summary judgment for the remaining defendants on the ground of issue preclusion was not entered until January 24, 1991, and a notice of appeal was thereafter filed by Dr. Atiya on February 22, 1991.

■ Guyon, Homer and Adams, who comprised the CSC, filed in this court a motion to dismiss Dr. Atiya's appeal as it relates to them on the ground that her notice of appeal was untimely, since it wasn't filed within 30 days after summary judgment was entered in their favor on April 5, 1989. Such argument overlooks Fed.R.Civ.P. 54(b). That rule provides that where an action involves multiple claims or parties the district court may direct the entry of a final judgment as to one or more, but fewer than all, of the claims or parties upon an "express determination" that there is no just reason for delay thereof. In the absence of such determination, any order, however designated, which adjudicates fewer than all of the claims or the liabilities of all of the parties, is not a final appealable order. *See England v. Hendricks*, 880 F.2d 281, 285 (10th Cir.1989), *cert. denied*, 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990).

It would appear from the record before us that the district court in the instant case made no "express determination" that its order of April 5, 1989, was a final, appealable order. Such being the case, the notice of appeal filed within 30 days of the order of the district court granting summary judgment for the remaining defendants, was timely as to all defendants, including Guyon, Homer and Adams. Fed.R.App.P. 4(a)(1).[1]

As to the merits of the district court's grant of summary judgment in favor of Guyon, Homer and Adams, we agree that they are entitled to quasi-judicial immunity.[2] In *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978), the Supreme Court held that a state judge was immune from damages liability, even if his actions were in error, were done maliciously, or were in excess of his authority, and that he could be subject to liability only if he acted in a "clear absence of all jurisdiction." In *Butz v. Economou*, 438 U.S. 478, 504, 512–13, 515, 98 S.Ct. 2894, 2909, 2913–14, 2915, 57 L.Ed.2d 895 (1978), the Supreme Court indicated that the immunity given state judges was applicable to adjudicative administrative officials, since their role is "functionally comparable" to that of a judge.

The CSC derives its power from Utah legislative enactment. Utah Code Ann. § 17–33–4, provides in pertinent part as follows:

The council shall hear appeals not resolved at lower levels in the cases of employees suspended, transferred, demoted, or dismissed as well in the cases of other grievances not resolved by the grievance procedure at the division or departmental level; it shall review written appeals in cases of applicants rejected for examination; and shall report final binding appeals decisions, in writing, to the governing body. However, a right of appeal to the district court under the provision of the Utah Rules of Civil Procedure shall not be abridged.

Under the foregoing statute, it would appear quite clear that in hearing and deciding Dr. Atiya's claim that she was improperly discharged in retaliation for her exercise of her right to free speech, the CSC's duties were "functionally comparable" to those of a state judge. *See Vakas v. Rodriquez*, 728 F.2d 1293, 1296–97 (10th Cir.), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984) (giving quasi-judicial immunity to an administrative board); *Lentsch v. Marshall*, 741 F.2d 301, 304 (10th Cir.1984) (giving immunity to a civil service agency). In this regard, it should be noted that Dr. Atiya instituted the proceeding before the CSC. Further, after suffering an adverse proceeding, Dr. Atiya did not exercise her right of appeal to the state district court as provided in Utah Code Ann. § 17–33–4.[3] In hearing and rejecting Dr. Atiya's claim, the CSC most certainly was not acting in a "clear absence of all jurisdiction." The district court did not err in granting summary judgment for the individual members of the CSC on the ground of quasi-judicial immunity.

Proceeding next to consider the district court's grant of summary judgment for the remaining defendants based on collateral estoppel, as previously indicated, Dr. Atiya moved to strike the defendants' motion for summary judgment based on collateral estoppel or issue preclusion on the ground that such had not been pled in

---

1. By separate order entered this date, the motion of Guyon, Homer and Adams to dismiss the appeal, as it relates to them, has been denied.

2. While Dr. Atiya has not specifically addressed the district court's grant of summary judgment based on quasi-judicial immunity, this court will address this issue since this court has now determined that it has jurisdiction of Dr. Atiya's appeal as it relates to these three defendants and the district court's analysis regarding collateral estoppel does not apply to them.

3. In *Tolman v. Salt Lake County Attorney*, 818 P.2d 23 (Utah App.1991), the Utah Court of Appeals vacated a judgment of the district court which had, in effect, affirmed an employment decision by the CSC upholding the termination of an investigator's job with the Salt Lake County Attorney's office and ordered the CSC to conduct a new hearing.

defendants' answer, and that such failure constituted an irrevocable waiver of the issue. In this regard, the district court granted the defendants' request that they be allowed to amend their answer to include *res judicata* and collateral estoppel, which they did.

On appeal, Dr. Atiya contends that the district court abused its discretion in permitting the defendants to amend their answer. We do not agree. Fed.R.Civ.P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." We do not know why the defendants did not affirmatively plead in their initial answer the defenses of *res judicata* or collateral estoppel, but the fact that Dr. Atiya grieved her discharge before the CSC, and lost, posed, at the very least, a potential issue of real substance, i.e. issue preclusion. Justice, to us, suggests that the defendants were properly allowed to amend their answer. Such did not occur on the eve of trial and did not delay a determination of the dispute—in fact it accelerated the resolution thereof, a dispute which, incidentally, has now been dragging on for over ten years.

■ This is not an instance in which a district court *denied* a motion to amend, in which event the district court should identify its reasons for so doing. *Las Vegas Ice and Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir.1990) (quoting *State Distributors, Inc. v. Glenmore Distilleries Co.,* 738 F.2d 405, 416 (10th Cir. 1984)) (listing the factors a district court must review when denying leave to amend); *see also First City Bank, N.A. v. Air Capitol Aircraft Sales,* 820 F.2d 1127, 1132–33 (10th Cir.1987) (noting similar factors); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (same). Rather, this is an instance where the district court *granted* a request to amend pleadings, and, in the words of the rule, a request to amend should be "freely given." The district court did not abuse its discretion by granting leave to amend. *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1028 (10th Cir.), *cert. denied,* — U.S. —,

113 S.Ct. 601, 121 L.Ed.2d 537 (1992) (holding that the district court's grant or denial of leave to amend pleadings is reviewed by the appellate court for abuse of discretion).

As indicated, in granting summary judgments for all defendants other than Guyon, Homer and Adams (the CSC), the district court relied heavily on *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). In that case, Elliott, a black employee of the University of Tennessee, was informed that he was going to be discharged because of inadequate job performance and he immediately requested an administrative hearing. Prior to the commencement of the administrative hearing, Elliott also filed suit in federal district court against the University and others, alleging that his proposed discharge was racially motivated. The district court allowed the administrative hearing to go forward. The administrative hearing culminated in a decision, which was later affirmed by a University vice president, that the proposed discharge was not racially motivated.

Elliott did not thereafter seek state court review of the administrative proceeding, as was provided for by statute. Instead, he returned to federal district court to pursue his federal civil rights action. Elliott's federal action was based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1983. The district court thereafter granted summary judgment for the defendants on the grounds that the administrative law judge's ruling was entitled to preclusive effect.

On appeal, the Sixth Circuit reversed the district court, holding that neither Elliott's Title VII claim or his federal civil rights claim under 42 U.S.C. § 1983 was precluded by an unreviewed determination by a state administrative agency.

On certiorari, the Supreme Court affirmed, in part, and reversed, in part, the Sixth Circuit. The Supreme Court affirmed the Sixth Circuit's holding that unreviewed state administrative proceedings did not have a preclusive effect on a Title VII claim. However, as concerns Elliott's claim based on 42 U.S.C. § 1983, the

Supreme Court held that the Sixth Circuit erred and in connection therewith spoke as follows:

> Accordingly, we hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, [*United States v.*] *Utah Construction & Mining Co., supra,* [384 U.S. 394], at 422 [86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)], *federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."*

*Elliott,* 478 U.S. at 799, 106 S.Ct. at 3226 (emphasis added).

■ To summarize the holding in *Elliott,* a federal district court in a proceeding under 42 U.S.C. § 1983 *must* give a state agency's fact-finding the same preclusive effect to which it would be entitled in the state's court *if* the state agency: (1) was acting in a judicial capacity; (2) resolved disputed issues of fact properly before it; and (3) the parties had an adequate opportunity to litigate the issues in dispute. We believe the instant case meets the *Elliott* test.

■ In our view, the CSC, in resolving the grievance presented to it by Dr. Atiya, was "acting in a judicial capacity." As indicated, the CSC received its powers and authority to act from the legislature of the State of Utah. Utah Code Ann. § 17–33–4. The "issue of fact properly before it" was whether Dr. Atiya was discharged properly under the applicable rules and regulations when she refused to accept reassignment or whether she was discharged in retalia-

tion for exercising her constitutional right of free speech. Further, the record indicates that the parties were given an adequate opportunity to litigate the issues before CSC. In this regard, we note, as did the district court, that at the hearing before the CSC both Dr. Atiya and the Salt Lake County Mental Health Department were represented by counsel, opening and closing statements were made, witnesses were examined and cross-examined, exhibits introduced, and that the hearing itself extended over some six days. All of which convinces us that Dr. Atiya had her "day in court" and suggests that she should not be allowed to relitigate a second time the issue of whether she was discharged because of her failure to report to her reassignment position or in retaliation for her public criticisms of the mental health program at the county jail.[4]

■ However, under *Elliott,* the federal court must only give the fact-finding of the CSC such preclusive effect to which it would be entitled in a state court in Utah. *Id.* Utah has adopted the following test to determine if collateral estoppel, or issue preclusion, applies:[5]

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the issue in the first case competently, fully, and fairly litigated?

---

4. We believe our application of *Elliott* to the instant case is in accord with our application of *Elliott* in *Amoco Production Co. v. Heimann,* 904 F.2d 1405, 1415 (10th Cir.1990), *cert. denied,* 498 U.S. 942, 111 S.Ct. 350, 112 L.Ed.2d 314 (1990) (using *Elliott* as guidance in a diversity action, which requires a federal court to only give the preclusive effect that the state would give) and *Long v. Laramie County Community College District,* 840 F.2d 743, 751 (10th Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988) (using the *Elliott* factors in a federal action under 42 U.S.C. § 1983, then applying state collateral estoppel law).

5. Utah jurisprudence recognizes two distinct branches of *res judicata,* namely claim preclusion (*res judicata*) and issue preclusion (collateral estoppel). *Madsen v. Borthick,* 769 P.2d 245, 247, 250 (Utah 1988) (citing *Noble v. Noble,* 761 P.2d 1369 1374 n. 5 (Utah 1988). Claim preclusion bars relitigation of claims that were or "could or should have been raised in the first action." *Madsen,* 769 P.2d at 247. The district court held that claim preclusion did not apply to the instant case. Collateral estoppel or issue preclusion, which the district court held did apply to the instant case, bars relitigation of identical issues. *Id.* at 250.

*Madsen v. Borthick,* 769 P.2d 245, 250 (Utah 1988). We think the instant case meets the above test.

 "The applicability of collateral estoppel does not depend upon whether the claims for relief are the same. What is critical is whether the issue that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue as that raised in the second suit." *Robertson v. Campbell,* 674 P.2d 1226, 1230 (Utah 1983) (citing *Searle Bros. v. Searle,* 588 P.2d 689, 690–91 (Utah 1978)). In *Robertson,* the issue was whether a testator had been unduly influenced. The defendant asserted that the prior suit involved the validity of the will, not the validity of the trust, which was at issue in the second suit. The Utah Supreme Court held that finding undue influence when the testator signed both documents precluded relitigation of undue influence regarding the trust. *Robertson,* 674 P.2d at 1230. Similarly, in her grievance before the CSC, Dr. Atiya's position was that her discharge was wrongful and was in retaliation for her public comment, which is her position in the present proceeding. Thus, there is an identity of issues. And, retaliation was essential to the CSC's resolution, because they had to determine whether Dr. Atiya was wrongfully terminated.

 The CSC judgment was a final one, Dr. Atiya electing not to pursue her right to have the CSC's decision reviewed by a state district court. Utah Code Ann. § 17–33–4(1). Moreover, Utah law provides that, unless it is reversed on appeal, a judgment is final for issue preclusion purposes. *Berry v. Berry,* 738 P.2d 246, 249 (Utah App.1987) (citing *Copper State Thrift & Loan v. Bruno,* 735 P.2d 387, 390 (Utah App.1987) and *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)).

 And, of course, Dr. Atiya was a party to the hearing before the CSC, having filed the grievance. The Utah Supreme Court has held that collateral estoppel can be used defensively—i.e. be asserted against a party who was in the first action. *Robertson v. Campbell,* 674 P.2d 1226, 1230 (Utah 1983) (citing *Searle Bros. v. Searle,* 588 P.2d 689, 690–91 (Utah 1978)). Since Dr. Atiya was a party in the CSC hearing, collateral estoppel can be asserted against her in her federal cause of action.

 Finally, as indicated above, the issues before the CSC were, in our view, fully and fairly litigated. *Copper State Thrift & Loan,* 735 P.2d at 391 (holding that this requirement is met if "the parties ... receive notice reasonably calculated, under all circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections"). In this court, counsel for Dr. Atiya suggests that the hearing before the CSC was not full and fair, claiming that counsel's cross-examinations of some witnesses were cut short, that rules of evidence were not rigorously enforced, and that after announcing its decision, the CSC asked counsel for the Salt Lake County Mental Health Unit to prepare a proposed order. We are not persuaded. A six-day adjudicative administrative hearing suggests that such was at least a full hearing, and from the record before us it seemed to be a "fair" one.

Since *Elliott* requires a federal court to give as much preclusive effect as the state's courts would give, on the facts of this case the district court did not err in giving collateral estoppel effect to the factual findings of the CSC.

Judgment affirmed.