## ALLEN v. ALLEN et al.

No. 7247.   Decided April 6, 1949.   (204 P. 2d 458.)

See 26 C. J. S., Deeds, sec. 183; 16 Am. Jur. 526. Delivery of deed without manual transfer or record, note, 129 A. L. R. 11.

*William L. Beezley,* of Salt Lake City, for appellant.

*A. H. Hougaard* and *A. W. Hougaard,* both of Salt Lake City, for respondents.

PRATT, Chief Justice.

In this action plaintiff seeks to have the court declare that she has a one-half interest in the following described

premises; and, as the premises cannot be partitioned, that they be sold, and one-half the proceeds paid to her. The defendants by counterclaim contend they own the premises. The issue is submitted to us upon two points of controversy: (1) Was there a delivery of the deed of January 12th, 1929; and (2) was Section 104-49-2, U. C. A. 1943, violated— pertaining to testimony about matters equally within the knowledge of the witness and the deceased?

This is what happened:

On January 12, 1929, Luisa Allen, a widow and mother of plaintiff Livinia Allen Smith and defendant Edward F. Allen (half-sister and brother), executed a quit-claim deed naming said daughter and son as grantees. The property is described as:

"Commencing at a point 2½ rods North of the Southeast corner of lot 8, Block 41, Plat 'B' Salt Lake City Survey, and running thence North 2½ rods, thence West 10 rods, thence South 2½ rods, thence East 10 rods, to the place of beginning."

In that deed the mother included this:

"Grantor reserves a life estate in the aforesaid real property, but gives the grantees the right to live with her, the grantor upon said property, providing; it is agreeable with the grantor at all times, otherwise; the grantor reserves the right to eject either or both of said grantees from the premises and in that event the grantees would not retain possession of any part of said premises until after the death of the said grantor. Grantor reserves the full and complete right to control her life estate herein."

The grantor, mother, had the deed recorded January 16, 1929, but had the recorder return the deed to her, and kept it in her possession until her death on July 2, 1947. There was never a manual delivery of that deed to either the son or the daughter. It is upon this deed that the plaintiff daughter founds her claim to a one-half interest in the property.

On September 12, 1946, the mother made, executed and delivered a quitclaim deed of the same property to the son

and his wife Peggy Allen, the other defendant. This deed was recorded September 14, 1946. It is upon this deed that defendants found their counterclaim.

The lower court found in favor of defendants and this appeal followed.

Actual manual delivery of the deed to the grantee or grantees is, of course, not necessary. 16 Am. Jur. 506, Sec. 122. Absent such a delivery, the question becomes one of determining what the acts and statements of the grantor indicate as to whether or not there was constructive delivery. 129 A. L. R. 11. This brings into the picture in this case, such questions as the effect of reservation of a life estate; the recording of the deed; the return of the deed to the grantor after recording; and the acceptance of the conveyance by the grantee. In addition to the annotation cited above, see also 54 L. R. A. 884, 887, 889—this citation has considerable upon the effect of recording.

A few additional facts under the testimony; Plaintiff testified she knew about the 1929 deed, as she went with her mother to the attorney's office to have it drawn and executed; but she did not know what happened to it afterward. She said her mother stated that she, plaintiff, was to have half the property. Defendant Edward F. Allen, disclaimed any knowledge of the 1929 deed until in 1947 when difficulty arose between his family and plaintiff's and he consulted an attorney about evicting his sister from the house. The attorney found the 1929 deed of record. Edward stated that he went home and asked his mother about it, and she denied it was a deed, but claimed it was a will. She produced it, and he explained to her that it was a deed and not a will. This upset her. She was, at this time, about 80 years old and forgetful.

Edward also testified about his mother desiring him to have the property, and also about the execution of the 1946 deed, when his sister, the plaintiff, was in the next room; that he called it to her attention; and that she never said

anything about the 1929 deed until after Edward's attorney had discovered the deed had been recorded. She explained this by saying that she was afraid of her half-brother because he was always hot tempered—that she would usually leave notes for him to read rather than converse with him. There was evidence in the case that she felt inferior to him. The trial court by its finding of fact number four found that neither plaintiff nor defendant had any knowledge of the execution or recording of the 1929 deed until May, 1947.

It is admitted that Edward paid considerable money to his mother for her support, for taxes, and paid off a mortgage on the premises. He lived with his mother after the 1929 deed, altogether some 15 years; his sister lived there about 12 years after that deed. Part of this time each was married, and all families lived as a family unit.

Edward denies ever having seen any tax notices, all of which came in the name of all three, plaintiff, her mother, and Edward. It is uncontroverted however as indicated, that Edward furnished the money to pay the taxes.

Two neighbors testified that the mother always spoke of having executed her will; and that she showed as much affection for the daughter as the son.

On learning of the 1946 deed, plaintiff and her sister-in-law, defendant Peggy F. Allen, had words, as plaintiff was crying over not sharing in the property.

Defendant Peggy F. Allen testified that plaintiff said defendant Edward should have the property as he had paid so much on the place.

Edward never requested his sister to bear part of the expense of the place.

After the incident of her disclosure to her son of the 1929 deed, the mother visited a neighbor at considerable physical risk, and seemed all broken up that she had done

something that might interfere with her son acquiring the property.

The difficulty that arises in interpreting this case lies in the element of time. The mother's desires favorable to her son in the later years of this period—in the 1940's—could well be just as strong as defendants would have us believe, and yet not be inconsistent with her desires of 1929. Whether her misunderstanding about the 1929 deed arose out of forgetfulness of just what she had done, or a lack of a clear understanding in 1929 of the effect of the deed, is very uncertain. Certain it is, that her visit to her attorney in 1929, and her signing of a paper that bears in its caption—in large black letters—"Quit Claim Deed." would hardly lead one to believe that she had executed a will. Strength is added to this conclusion by the fact that considerable particularity is included in the deed in providing for the life estate. It is not unlikely that the making of a will was discussed, but the conclusion was reached that the deed with life estate reservations was the better way to see that her children shared alike in her property, as it would avoid probate. Whether she intended a deed or a will it seems fair to say that at that time she was desirous of the son and daughter sharing alike.

We start then in 1929 with a mother who was desirous that her two children share alike. She executed the deed accordingly; and then presented it to the recorder for recording. It is recorded, and pursuant to her direction, returned to her. All this occurs immediately after she consults her attorney. If she took the deed back on any theory that she might later change her mind and convey or will the property to just one of them, she had rather successfully placed it in the power of the excluded heir to interfer with and perhaps defeat her purpose, by a conveyance to others of a one-half interest in the property— in fact no one would take that property from the mother thereafter without the signatures of the heirs. Her retention of the deed did not give her quite the absolute con-

trol of that property that would have been the fact, had she not recorded it.

The recording of a deed raises a presumption of delivery. See L. R. A. citations above and *Chamberlain* v. *Larsen*, 83 Utah 420, 29 P. 2d 355. The retention of a life estate in the property covered by the deed, raises a presumption that the deed is to operate immediately, as a conveyance since retention of the part is indicative of an intention to divest herself of the balance presently, and adds strength to the presumption of delivery arising from the recording. See 129 A. L. R. 38, XI. In the present case, then, we have two acts indicative of an intention to make an immediate conveyance—the retention of the life estate and the recording. What then of the retention of the deed after recording? As the grantor had reserved a life estate in herself, there is some reasonable explanation for her desire to retain it as evidencing her interest. Furthermore, since the conveyance was to two persons it appears logical that she would desire to have possession of the deed herself. Thus, the return of the deed to her after recording does not necessarily militate against the presumption of delivery arising from that recording under the circumstances of this case. The recording of the deed and placing the names of others on the property is somewhat in the nature of a public declaration that she intended the instrument to become effective immediately. People as a rule do not deliberately put a flaw in the title to their property, thereby handicapping its later disposal, unless they really intend to transfer some interest to the person whose name is thus placed in the record.

Thus we have, in 1929, a mother who is desirous of having her children share alike in her property, executing a deed indicative of that fact; telling her daughter that such is her desire; having the deed recorded, thereby placing their names in the record of title as grantees; retaining for her own protection during her

lifetime, a life interest in the property; and retaining the deed in her possession. These facts are all consistent with constructive delivery. Now what about acceptance by the grantee, or grantees?

Edward Allen denied any knowledge of the deed. Plaintiff, however, claimed knowledge of its execution and claimed that she attended the making thereof to which she raised no objection and did not repudiate it. She admitted that she did not know that it had been recorded; but when she did learn of that she did not repudiate it. A failure to renounce the deed after learning of it has been held to constitute an acceptance. 16 Am. Jur. 526, Sec. 159. Plaintiff is not affected by the fact that Edward did not know of the deed. She could accept her one-half without regard to his desire to repudiate if he had such a desire. Furthermore, there was no provision in the wording of the deed that imposed any particular burden on the grantees, which provision, were it there, might naturally call for stronger evidence of acceptance than silence on the part of the grantees.

This brings us down to the events of later years. The mother's desire changed. She wanted her son to have the property. She spoke of having made her will. By will, she apparently referred to the deed of 1929. Her physical condition became poor. She was in or near her eighties in age. She was forgetful. Seventeen years after the 1929 deed she executed the other deed leaving her daughter out. There was a considerable background for a feeling of favoritism for her son to creep into her life, as he expended money on her behalf and on behalf of her property. She apparently relied upon him considerably.

Do these facts indicate that she had not intended the 1929 deed to be immediately effective? Do they have probative value of a retroactive effect? They are consistent with forgetfulness or misunderstanding of the legal effect of what she did in 1929 or with a change of mind and

desires later, and are not necessarily probative of a knowledge that she did not actually convey her land in 1929; or did not actually intend to convey her land at that time. We conclude that the evidence adduced by the defendants does not rebut the presumption of delivery arising by virtue of recordation under the circumstances of this case, and that the trial court erred in determining that there had been no delivery.

In view of our decision, it becomes unnecessary to determine the second matter raised by the appellant, that of the "Dead Man Statute."

Reversed and remanded for proceedings to conform herewith. Costs to appellant.

WADE and McDONOUGH, JJ., concur.

LATIMER, Justice (concurring in result).

Both grantees testified that there had not been a manual delivery of the deed. Such being the state of the record, I see no purpose in discussing presumptions of delivery. The evidence touching on the grantor's words and acts and the facts and circumstances preceding, attending and subsequent to the execution of the deed compel a finding of constructive delivery of the instrument with intent to convey title.

WOLFE, J., concurs for the reasons expressed by LATIMER, J.