Carol K. BAKER, Personal Representative, In the Matter of the Estate of Leda K. Wickel Little, aka Leda K. Wickel, Plaintiff and Appellant,

v.

Dwight G. PATTEE and Vella M. Pattee, Defendants and Respondents.

No. 18277.

Supreme Court of Utah.

June 1, 1984.

Robert M. Anderson, Danny C. Kelly, Salt Lake City, for plaintiff and appellant.

Richard A. Rappaport, Salt Lake City, for defendants and respondents.

HOWE, Justice:

Plaintiff, personal representative of the estate of Leda K. Wickel Little, deceased, brought this action against defendants to cancel a warranty deed executed by the deceased in 1964 and to quiet title to the real property described in the deed. She alleged lack of intent to deliver the deed, conveyance in trust, undue influence by one in a confidential relationship and failure of consideration or grossly inadequate, unconscionable and unfair consideration. Defendants counterclaimed, seeking to quiet title in themselves, generally denying the allegations of the complaint and further defending on the grounds that the action was barred by applicable statutes of limitation. The trial court entered judgment for the defendants and plaintiff appeals.

Leda Little and her first husband were the owners of three homes, No. 1909, No. 1911 and No. 1915 East 4500 South in Salt Lake County, Utah, on property roughly 1½ acres in size. They moved into No. 1909 in 1940 and built No. 1915 in 1957, but he died before she moved into it in 1958. No. 1911 was a modular home moved onto the property in 1950.

Little had met Clyde Bradshaw, a realtor, through her first husband. Both she and Bradshaw were from Minersville,

Utah, and became good friends. Three years after her husband died, Little asked Bradshaw to sell the property, as there were delinquent property taxes owing and she was having difficulty maintaining it. When Bradshaw was unable to sell it for cash as she requested, she offered to convey the property to him in return for his paying the taxes and providing her a place to live for the rest of her life. Bradshaw did not want to shoulder that responsibility but put her in touch with his daughter and her husband, Dwight and Vella Pattee, the defendants herein. Mr. Pattee, also a realtor, attempted to sell Nos. 1909 and 1911 over a period of six months, but was unable to find purchasers for cash. The listing agreement expired in January of 1964. At about that time, Little extended the same proposal to Pattee that she had earlier made to Bradshaw. Pattee was reluctant at first, thinking that it was too much responsibility for him and his wife. Little was 59 years old and wanted defendants' assurance that she would always have a place to live in comfort in return for deeding the property to them. Both parties consulted a lawyer for advice, but did not transact any business through him. Instead, Pattee prepared a warranty deed and on September 30, 1964, went to Little's home with his brother-in-law, a notary public, where Little executed the deed conveying the three homes to defendants. Pattee took the deed with him and thenceforth assumed and paid the taxes on the property. Little continued to live in No. 1915 and to receive $50 a month rent from one of the other houses until her death in 1978.

On February 17 and April 21, 1965, Little executed two separate public welfare lien agreements with the Salt Lake County Public Welfare Department, pledging the property as collateral. Defendants had no knowledge of that transaction. They recorded their deed on March 22, 1965. Some time later, Little remarried and continued to live in the home at No. 1915 with her second husband. Both of them repaid the amounts received from the Department of Public Welfare and the lien on the property was fully discharged in December of 1971.

In early October 1978, Little and her husband were admitted to a nursing home, where she died later that month, never having by word or action attempted to repudiate the conveyance. She had no children and both her parents and siblings had predeceased her. Plaintiff is Little's niece and her closest surviving relative.

■ Plaintiff urges us to conduct a new and independent review of both questions of law and questions of fact. A party attacking the validity of a written instrument must do so by clear and convincing evidence. *Pagano v. Walker*, Utah, 539 P.2d 452 (1975) (joint bank account); *First Security Bank of Utah, N.A. v. Hall*, 29 Utah 2d 24, 504 P.2d 995 (1972) (stock certificates); *Controlled Receivables, Inc. v. Harman*, 17 Utah 2d 420, 413 P.2d 807 (1966) (deed); *Haywood v. Gill*, 16 Utah 2d 299, 400 P.2d 16 (1965) (joint bank account); *Northcrest, Inc. v. Walker Bank & Trust Co.*, 122 Utah 268, 248 P.2d 692 (1952) (deed). This Court will disturb the findings of fact in equity cases only where the evidence clearly preponderates against them. *Bown v. Loveland*, Utah, 678 P.2d 292 (1984); *Del Porto v. Nicolo*, 27 Utah 2d 286, 495 P.2d 811 (1972); *First Security Bank of Utah, N.A. v. Hall*, supra. We are not bound to substitute our judgment for that of the trial court, and because of its advantaged position, we give considerable deference to its findings and judgment. *Gillmor v. Gillmor*, Utah, 657 P.2d 736 (1982); *Jensen v. Brown*, Utah, 639 P.2d 150 (1981); *Pagano v. Walker*, supra. The trial court, after addressing the substantive issues, found all of plaintiff's claims to be barred by U.C.A., 1953, §§ 78–12–25, 78–12–26, 78–12–5 and/or –6. We shall address the pertinent statutes of limitation in conjunction with the respective claims on appeal before us.

## I.

■ Plaintiff contends that the deed was not delivered and accepted with the requisite legal intent and that at best it must be viewed to be a conveyance in trust.

Where a deed is executed with no intent to transfer a present interest, it will be invalidated by a court in equity. *Curtiss v. Ferris,* 168 Colo. 480, 452 P.2d 38 (1969). This Court has held that a conveyance is valid only upon delivery of a deed with present intent to transfer, *Givan v. Lambeth,* 10 Utah 2d 287, 351 P.2d 959 (1960). A presumption of valid delivery arises where the deed has been executed and recorded, *Kresser v. Peterson,* Utah, 675 P.2d 1193 (1984); *Controlled Receivables, Inc. v. Harman,* supra, but such a presumption may be overcome by clear and convincing evidence to the contrary. *Gold Oil Land Development Corp. v. Davis,* Utah, 611 P.2d 711 (1980).

> The recording of a deed and placing the names of others on the property is somewhat in the nature of a public declaration that [the grantor] intended the instrument to become effective immediately. People as a rule do not deliberately put a flaw in the title to their property, thereby handicapping its later disposal, unless they really intend to transfer some interest to the person whose name is thus placed in the record.

*Allen v. Allen,* 115 Utah 303, 204 P.2d 458 (1949).

■ Plaintiff contends that Little did not deliver the deed with the requisite intent to divest herself of all right, title and interest in the property, and that her estate should therefore be permitted to enforce a resulting trust. An essential element of a resulting trust is the *intent* of the creator that the res be held in trust. *Parks v. Zions First National Bank,* Utah, 673 P.2d 590 (1983); *Jones v. Jones,* Okla., 459 P.2d 603 (1969). Had that been the finding in the instant case, the statute of limitations would not begin to run until the trustees affirmatively repudiated the trust. Therefore, this action would not be barred. *Parks,* supra. Plaintiff attempted to show that about the time Little conveyed the property to Pattee she was the defendant in a suit for alienation of affections and that she wanted to remove her assets from the reach of a potential judgment creditor. However, the trial court found the convey-

ance to have been absolute and unconditional and not in trust. That finding was supported by testimony that Little knew that she had conveyed her property to defendants with the full understanding that she had no further claim to it. There was evidence that she may not have understood the nature of the lien agreements she executed encumbering the property. Documents proved that she repaid all sums received through welfare assistance and that the liens were subsequently discharged. In the 14 years Little lived after conveying her property, she never once attempted to obtain its return or told anyone that she still owned what she had conveyed away. Under those circumstances, we are disinclined to upset the trial court's finding in the absence of any clear weight of evidence to the contrary. Plaintiff's claim of a trust was thus barred as the requisite statute of limitations, U.C.A., 1953, § 78–12–25(2) (actions for relief not otherwise provided for by law), began to run no later than the date the deed was delivered.

## II.

■ Plaintiff also claims that there was failure of consideration for the deed, or to the extent consideration was given, the same was grossly unfair and inadequate. Specifically, plaintiff relies upon a letter written by Pattee to Little two years after the conveyance. The letter confirmed that an agreement had been reached at the time of the conveyance and then continued:

> I will permit you to live at 1915 East 4500 South for as long as the property is in my possession. I will try to sell [the other homes on the property], but you may stay in your present home as long as you wish, provided only that you pay the expenses thereto, i.e., all utilities, water, gas, electricity, taxes, etc. as may become due thereon.

Pattee testified that he wrote that letter at Little's request at a time when he was piloting planes to Southeast Asia and all over the world. Little was concerned lest his family should fail to follow through on

the agreement if something happened to him. He stated that he wrote the proviso on expenses because he was afraid that in the event of his death, his wife would not have the income to pay them. Nonetheless, the evidence is undisputed that he continued to pay taxes on the property throughout Little's remaining years. At the time of her death he had paid a total of $12,581.33. In addition, Little received a monthly income of $50 from one of the other homes through the period at issue here, approximately 15 years. Furthermore, she lived rent-free in her home until a month before she died.

Plaintiff claims that the value of the property was stated to be $35,000 in 1957 in the probate proceedings of the estate of Little's first husband. The record is totally barren of any support for that assertion. The present value of the property is claimed to be far in excess of that amount. We are here concerned, of course, only with what the value of the property was in 1964 at the time of conveyance. The trial court found that defendants gave adequate and substantial consideration for the subject property. They paid property taxes and assessments over a period of 14 years, provided Little a home for the remainder of her life, and fully performed the terms of their agreement with her. The weight of the evidence does not clearly preponderate against that finding, and we will not disturb it.

An action demanding cancellation of a deed for failure of consideration is an equitable action and governed by § 78–12–25(2). Without deciding here whether the deed was delivered when signed by Little or when recorded by Pattee, an issue not before us, we hold that the period of limitations had run long before this action was instituted.

### III.

Plaintiff's position with respect to the issue of undue influence is essentially two-fold: (1) a confidential relationship existed between Pattee and Little, and the burden shifted to him to prove that he did not procure the deed by undue influence; and (2) even in the absence of a confidential relationship, the evidence clearly preponderated against the trial court's finding that the conveyance was not procured by undue influence. In cases of undue influence and duress the limitation period begins with the termination of the influence. Developments in the law—Statute of Limitations (1950) 63 Harv.L.Rev. 1177. See also *Baker v. Massey*, Okla., 569 P.2d 987 (1977) for a discussion of the applicable statute of limitations for equitable actions based on undue influence.

A confidential relationship is presumed between parent and child, attorney and client, and trustee and cestui que trust. *Blodgett v. Martsch*, Utah, 590 P.2d 298 (1978). The same holds true between a spiritual advisor and a dying man. Corporation of the Members of the *Church of Jesus Christ of Latter-day Saints v. Watson*, 25 Utah 45, 69 P. 531 (1902). Where a confidential relationship exists, a presumption of unfairness arises which must be overcome by countervailing evidence, and the burden shifts to the defendant to prove absence of unfairness by a preponderance of the evidence. *Robertson v. Campbell*, Utah, 674 P.2d 1226 (1983) (finding of undue influence in execution of trust shifted burden to defendant to prove absence of undue influence in a subsequent alleged ratification of the trust); *Johnson v. Johnson*, 9 Utah 2d 40, 337 P.2d 420 (1959); *In re Swan's Estate*, 4 Utah 2d 277, 293 P.2d 682 (1956). In all other relationships the existence of a confidential relationship becomes a question of fact. *Blodgett v. Martsch*, supra.

The plaintiff contends that Pattee received the deed as Little's real estate agent while in a confidential relationship with her. In support, plaintiff cites cases showing a breach of fiduciary duty where real estate agents failed to disclose to their principals that they had ownership interests as buyers. *M.S.R., Inc. v. Lish*, 34 Colo.App. 320, 527 P.2d 912 (1974). See also *Ornamental and Structural Steel,*

*Inc. v. BBG, Inc.,* 20 Ariz.App. 16, 509 P.2d 1053 (1973); *Batson v. Strehlow,* 68 Cal.2d 662, 68 Cal.Rptr. 589, 441 P.2d 101 (1968). Under those circumstances a court will not uphold a transaction between a principal and his agent. No such failure to disclose has been claimed here. "The doctrine of confidential relationship rests upon the principle of inequality between the parties, and implies a position of superiority occupied by one of the parties over the other. Mere confidence in one person by another is not sufficient alone to constitute such a relationship." *Bradbury v. Rasmussen,* 16 Utah 2d 378, 401 P.2d 710 (1965). The trial court found that no confidential relationship existed between Little and Pattee and that Pattee was not serving as her agent at the time of the conveyance. The burden thus was plaintiff's to establish by clear and convincing evidence that Little conveyed her property as a result of Pattee's undue influence and that that influence continued until the time of her death.

To buttress her claim that Little acted under the undue influence of Pattee, plaintiff points to Little's commitment to a mental hospital and attendant emotional disorders some ten years before she executed the deed. She emphasizes that Little never went to school until she was 16 years of age. Countervailing evidence was submitted at trial that Little remarried subsequent to the execution of the deed, continued occupying her home, managed her own financial affairs and never concealed the fact that she had deeded away her property. Though she had bouts with physical illness, no evidence was adduced that Pattee at any time overpowered her volition to the extent that she was impelled to do—or refrain from undoing—that which she would not have done had she been free from such controlling influence so that the conveyance represented the desire of Pattee rather than that of Little. See undue influence defined in *In re LaVelle's Estate,* 122 Utah 253, 248 P.2d 372 (1952). There was no such dominance shown in any of the evidence before the trial court, and particularly no evidence that in the execution of the deed, Little acted under the undue in-

fluence of Pattee. In *In re Woodward,* Okla., 549 P.2d 1207 (1976), the nieces of a decedent attempted to set aside a joint tenancy deed in favor of their brothers on grounds of fraud, undue influence and lack of mental capacity. In holding that the statute of limitations had expired on the claims of fraud and undue influence, the court stated that the means of discovering fraud and undue influence came into the hands of the plaintiffs when the deed was filed of record and that they failed to exercise ordinary diligence in discovering it. See also *Mollendorf v. Derry,* 95 Idaho 1, 501 P.2d 199 (1972) (upholding transfer of property made by a man of little education to his niece, an experienced businesswoman); *Haywood v. Gill,* 16 Utah 2d 299, 400 P.2d 16 (1965) (upholding a joint bank account created by decedent five years before his death in favor of his daughter).

Pattee recorded the deed on March 22, 1965. Little took no action against him in the 14 years she lived thereafter. This case is distinguishable from *Robertson v. Campbell,* supra. There the father conveyed property into a trust that the court found had been earlier created by him under the undue influence of his daughter, who was the principal beneficiary. As a result, any ratification of the trust by the subsequent conveyance of property into the trust was held to be presumptively tainted. Here, by contrast, no further transaction took place, and Little validated and acknowledged the original transaction through subsequent inaction for well over a decade. The trial court found that Little initiated the conveyance and that the evidence was insufficient to show any undue influence on the part of Pattee in the execution of the deed, let alone subsequent to the transaction. The weight of the evidence does not clearly preponderate against that finding, and we will not disturb it.

In conclusion, we summarize our holdings on the various issues before us. No confidential relationship existed between Pattee and Little, so the burden remained upon the plaintiff to prove by clear and

convincing evidence that the conveyance should be set aside. That burden was not met. No resulting trust could come into being, as the plaintiff did not prove that Little intended anything but an unconditional conveyance of her property. No constructive trust could be impressed upon the property by the Court, as no lack of consideration or undue influence was proven in the execution of the deed. The consideration paid by plaintiffs in 1964 was adequate and fully performed. Actions based on lack of consideration and undue influence are equitable actions governed by the four-year statute of limitations. The date of delivery of the deed set the period of limitations in motion and those actions were barred years before Little's death.

The judgment of the trial court is affirmed with costs to defendants.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

OAKS, J., having resigned, does not participate herein.