545 So.2d 471 (1989)
In re GUARDIANSHIP OF Anna REKASIS, Incompetent.
Leroy H. Merkle, Jr., As Guardian of the Person and Property of Anna Rekasis, Incompetent, Petitioner/Appellant,
v.
Enzalee HOGAN and James Hogan, Her Husband, Respondents/Appellees.
No. 88-02339.
District Court of Appeal of Florida, Second District.
June 21, 1989.
*472 Stephen F. Hanlon and M. Elizabeth Wall of Barnett, Bolt & Kirkwood, Tampa, for petitioner/appellant.
John K. Renke, II, New Port Richey, for respondents/appellees.
CAMPBELL, Chief Judge.
Appellant, guardian of the person and property of Anna Rekasis, appeals the order of dismissal of his causes of action filed on behalf of his ward. The trial court order determined that appellant's causes of action that arose out of transactions or occurrences that took place before February 1, 1984, were barred by the statute of limitations, and the court accordingly dismissed with prejudice. We reverse.
In late 1985, appellees Enzalee and James Hogan were joined by Mrs. Rekasis' nieces and closest relatives, Olga Rizzo and Blanche Bobrich, in a petition for appointment of a guardian of the person and property of Mrs. Rekasis. The petition alleged that Mrs. Rekasis was born January 1, 1893, was the resident of a nursing home in Pasco County and was incompetent by reason of senility. On December 4, 1985, the circuit judge in the guardianship proceeding entered an order appointing appellant, Leroy H. Merkle, Jr., an attorney, as guardian of the person and property of the incompetent, Mrs. Rekasis.
On June 5, 1987, appellant, as guardian of the property of Mrs. Rekasis, filed a complaint against appellee Enzalee Hogan, seeking to set aside inter vivos transfers from Mrs. Rekasis to Mrs. Hogan made on March 20, 1984. The complaint was subsequently amended to include appellee James Hogan and to include inter vivos transfers from Mrs. Rekasis dating back to 1977.
The amended complaint, for the purposes of the motion to dismiss being accepted as factually accurate, alleged, among other things, that in the 1920's Anna met and married Kaiton Rekasis in Detroit, Michigan, after they both had immigrated to the United States from Lithuania. During their marriage, the Rekasises acquired considerable property, both real and personal. In the early 1950's, the Rekasises retired and moved from Detroit to California where they engaged in other businesses and continued to acquire considerable assets. In 1969, Mrs. Rekasis executed a California will in which she left her entire residuary estate "to my good friend, Mrs. Alexandria N. Wherley (a/k/a Letty Wherley) of Detroit, Michigan." Shortly after Kaiton Rekasis' death in 1972, Mrs. Rekasis returned to Detroit to live with Letty Wherley and her husband Pete.
In April 1977, after Pete Wherley retired, the three of them, Anna, Letty and Pete, moved to New Port Richey, Florida. Mrs. Rekasis soon became ill and was hospitalized. She was released from the hospital in September 1977. Letty Wherley, who had been suffering from a chronic heart condition for some years, contacted Upjohn Healthcare Services ("Upjohn") to care for Mrs. Rekasis. Upjohn sent its representative, appellee Enzalee Hogan, to care for Mrs. Rekasis. Mrs. Hogan performed services for Mrs. Rekasis as a representative of Upjohn until November 1977, when Mrs. Hogan persuaded Mrs. Rekasis to move in with Mrs. Hogan and her husband, appellee James Hogan, in their mobile home in New Port Richey.
In December 1977, Mrs. Hogan, the complaint alleged, actively procured the execution of a new Florida will by Mrs. Rekasis. Mrs. Hogan took Mrs. Rekasis to James Campbell, an attorney who was then dating and eventually married Mrs. Hogan's daughter. The will prepared by Mr. Campbell and executed by Mrs. Rekasis named Enzalee and James Hogan as residuary beneficiaries rather than Letty Wherley. The complaint alleged that the will was the *473 result of undue influence by Mrs. Hogan over Mrs. Rekasis when Mrs. Rekasis was in a weakened physical and mental condition and when a confidential or fiduciary relationship existed between Mrs. Rekasis and Mrs. Hogan. Mrs. Hogan, shortly after the execution of the will, acquired a general power of attorney from Mrs. Rekasis by which, appellant alleged, Mrs. Hogan acquired substantial benefits.
Appellant also alleged the improper transfer of substantial sums of money in checking and savings accounts and certificates of deposit from Mrs. Rekasis to Mrs. Hogan. Appellant alleged that the undue influence exercised by Mrs. Hogan over Mrs. Rekasis was of such a character as to overcome Mrs. Rekasis' will, deprive her of her free agency and substitute the will of Mrs. Hogan for that of Mrs. Rekasis. Appellant alleged that from 1977 to 1984, Mrs. Rekasis continued to live with the Hogans and Mrs. Rekasis' physical and mental health continued to deteriorate. On March 24, 1984, Mrs. Hogan had Mrs. Rekasis, who was then incontinent, placed in an adult congregate living facility in Pasco County, where she required assistance to bathe and dress and walked only with great difficulty aided by the use of a walker.
Appellant alleged that four days before placing Mrs. Rekasis in the nursing home, Mrs. Hogan actively and improperly procured the transfer to herself of stocks and securities of Mrs. Rekasis' having a value in excess of $50,000. Appellant alleged that at all times since December 1977, when Mrs. Rekasis came to live with the Hogans, Mrs. Hogan took complete and total charge of Mrs. Rekasis' financial affairs, inducing her to transfer properties to Mrs. Hogan without adequate consideration.
Appellant requested in his complaint that judgment be entered against Mrs. Hogan requiring her to transfer to appellant, as guardian of the property of Mrs. Rekasis, all assets acquired from Mrs. Rekasis from September 1977 to the date of the filing of appellant's complaint or, in the alternative, to impose a constructive trust for the use and benefit of Mrs. Rekasis on the proceeds of any sale of such assets.
Both parties agree that the four-year statute of limitations set forth in section 95.11(3), Florida Statutes (1987), is the applicable statute governing appellant's cause of action. The parties disagree as to the time the statute commenced to run. The Hogans argued successfully to the trial judge that all claims based upon transactions occurring more than four years prior to the filing of appellant's amended complaint on February 1, 1988, are barred.
Appellant, on the other hand, argues that the statute of limitations did not begin to run until the Hogans' alleged undue influence over Mrs. Rekasis had terminated and Mrs. Rekasis, or someone on her behalf, became aware of the existence of the Hogans' alleged undue influence and the resulting misdeeds by the Hogans.
We agree with appellant and disagree with the Hogans' argument and the holding of the trial judge. Undue influence is a species of fraud. It differs from fraud to the extent that it can exist even where all of the facts surrounding a transaction infected with undue influence have been truthfully and fully represented. 27 Fla. Jur.2d 294 Fraud and Deceit § 10 (1981). Undue influence is treated as fraud in general. Peacock v. DuBois, 90 Fla. 162, 105 So. 321 (1925); Heasley v. Evans, 104 So.2d 854 (Fla. 2d DCA 1958).
Section 95.031(2), Florida Statutes (1987), provides that an action based upon fraud must be begun within the time periods prescribed in section 95.11(3), with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence but, in any event, within twelve years after the date of the commission of the alleged fraud.
The statute of limitations is ordinarily an affirmative defense unless the facts constituting the affirmative defense appear on the face of the complaint when it may be asserted as a basis for dismissal. Hofer v. Ross, 481 So.2d 939 (Fla. 2d DCA 1985). Here, as in Hofer, nothing in the pleadings *474 discloses when Mrs. Rekasis was sufficiently free from the alleged undue influence of the Hogans so that she or someone in her behalf should have been cognizant of the basis for her cause of action.
Courts in other jurisdictions have held that as a matter of law, facts giving rise to a cause of action based on undue influence do not become discoverable by the exercise of reasonable diligence until the termination of the influence. Baker v. Pattee, 684 P.2d 632, 636 (Utah 1984); Pacchiana v. Pacchiana, 94 A.D.2d 721, 462 N.Y.S.2d 256, 257 (N.Y. App. Div. 1983); McNeill v. Lovelace, 529 S.W.2d 633, 637 (Tex.Civ. App. 1975). See generally Developments in the Law  Statutes of Limitations, 63 Harv.L.Rev. 1177, 1219 (1950).
We agree and, therefore, reverse and remand this cause for further proceedings consistent herewith.
LEHAN and ALTENBERND, JJ., concur.