2011 UT App 214

**Rodney Frank GRGICH, Petitioner and Appellant,**

v.

**Sharon GRGICH, Respondent and Appellee.**

**Brenda Kathleen Gowans, Rodney Grgich Jr., and Brittney Kaye Grgich, Intervenors and Appellants.**

No. 20091002–CA.

Court of Appeals of Utah.

June 30, 2011.

---

Scott A. Broadhead, Tooele, for Appellants.

Gary Buhler, Grantsville, for Appellee.

Before Judges McHUGH, ORME, and VOROS.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Rodney Frank Grgich (Husband) appeals the trial court's Order and Judgment Concerning Distribution of Assets and Debts (Order) and its related findings of fact and conclusions of law. Husband argues that the trial court erred in concluding that Sharon Grgich's (Wife) claim to an interest in certain farm property (the farm) was not barred by the statute of limitations, that a 1990 quitclaim deed purporting to convey the farm to

Husband and three of the Grgich children was invalid, and that Wife was entitled to her attorney fees.[1] We affirm on the first two issues, but remand for the entry of additional findings of fact on attorney fees.

## BACKGROUND

¶ 2 Husband and Wife were married in 1967. The marriage produced five children, all of whom are now adults. From the time of their marriage until 1977, Husband and Wife lived on the farm, located in Tooele County, that originally belonged to Husband's father. The couple then lived in various other locations, losing residences through eviction and foreclosure until they ultimately moved back to the farm in 1993. In 1990, Husband inherited the farm from his father. The day after receiving title to the farm, Husband executed a quitclaim deed that purportedly conveyed the farm to himself and three of his then-minor children (the Children) as joint tenants. The quitclaim deed was signed and recorded at that time. Husband testified that he executed the quitclaim deed for "favorable property tax and inheritance tax treatment." Despite the existence of the recorded quitclaim deed, Husband borrowed against the farm multiple times for the benefit of himself and Wife, sometimes with the permission or knowledge of one or more of the Children, and other times without their knowledge or over their objections.

¶ 3 While on the farm, Husband and Wife lived in a dilapidated trailer that continued to deteriorate until they eventually lived with no utilities save an extension cord plugged into a neighbor's electrical socket. Husband moved out of the trailer and filed for divorce in 2006. Wife continues to live in the dilapidated trailer on the farm, while Husband has been supported by his children, first in his own fully-serviced trailer provided by one daughter, and then eventually living with another daughter.

---

1. Husband also claims that the trial court abused its discretion by granting him an inequitable share of the marital estate and that the trial court erred in awarding water rights associated with the farm to Wife because some of the water rights were owned by Husband's brother. Husband has not adequately briefed these issues, and we therefore decline to reach them. *See* Utah R.App. P. 24; *Morford v. Division of Child & Family Servs.*, 2010 UT App 285, ¶ 9, 241 P.3d 1213 (mem.). In addition, although Husband's brother filed a motion to intervene and a motion for relief from judgment, the brother subsequently withdrew both motions.

¶ 4 The divorce proceedings were originally tried before Judge Mark Kouris on November 15, 2007. Because neither party was financially stable, Judge Kouris determined that alimony would not be an option but that the marital assets would be divided. Wife claimed a one-half interest in the farm and cattle, asserting that it was part of the marital estate. In his divorce complaint, Husband asserted that he had sole ownership of the farm and cattle because he had inherited them. Sometime prior to the original bench trial, however, Husband changed tactics and claimed that he had no property to divide because the farm and other assets had been transferred to a trust before he filed the petition for divorce.[2] He claimed that the Children were the trustees and that the trust's purpose was to "take care of" Husband and Wife while they were alive.

¶ 5 After hearing evidence at a one-day bench trial, Judge Kouris issued a written ruling that states that "[no] documents were entered into evidence verifying the existence of this trust," that the "trust is not recorded by the appropriate county recorder or any other governmental entity," and that "the trial unearthed many facts that question the motivation and legitimacy of the alleged trust." Based on these findings, Judge Kouris concluded that "[t]here is no legal basis for the alleged trust discussed in trial, therefore this Court has the ability to equitably divide said assets." Judge Kouris further concluded that the inherited property had become part of the marital estate, in part due to Wife's "significant[ ] participat[ion] in the workings of the farm." Therefore, Judge Kouris awarded Wife "one-half of the interest and ownership that [Husband] had in the farm land, the associated water rights, and farm equipment."

¶ 6 After judgment was entered, the Children filed a motion to intervene and a motion to set aside the divorce decree and property distribution, asserting that based on the 1990 quitclaim deed, they had "a property interest in this matter which [was] not being protected." Due to changes in judicial assignments, Judge Steven Henriod was then assigned to the case. Judge Henriod granted the motion to set aside judgment and the motion to intervene, reasoning that the Children had no legal notice of the action and that the prior decision "would deprive them of their property rights." In response, Wife filed an Amended Answer and Complaint Against Intervenors, asserting that the Children "assisted [Husband] in a fraud upon the Court" when Husband deeded the farm to himself and the minor Children and that "the transfer was intended to deprive [Wife] of her marital interest in [the farm] to which she contributed significantly both before and after the deed recordation." The Children and Husband then filed a motion to dismiss, arguing that Wife's claim to the farm was barred by the statute of limitations contained in Utah Code section 78B-2-207 because she did not bring her "action for the possession or recovery of real estate" within seven years of the 1990 quitclaim deed. *See* Utah Code Ann. § 78B-2-207 (2008).

¶ 7 A second bench trial was held in June and July of 2009 before Judge Henriod. A few days before this second trial, the trust was either dissolved or "its nonexistence" was recognized by Husband and the Children. At the second trial, Husband and the Children claimed for the first time that the 1990 quitclaim deed was a valid transfer and therefore, only Husband's one-fourth interest could be included in the marital estate. Wife disagreed, asserting that the 1990 quitclaim deed was not a valid transfer and the entire farm was part of the marital estate.

¶ 8 Following the second trial, Judge Henriod concluded that because Husband did not have the present intent to transfer title to the farm when he issued the 1990 quitclaim deed, it was invalid.[3] Therefore, Judge Hen-

2. Apparently, some of the other assets transferred to the trust included water rights associated with the farm, some farm equipment, and possibly some cattle.

3. The findings and conclusions entered after the second trial state that "[Husband] was the only person who had control of [the farm] since 1989"; that "[Husband] ha[d] always done what he wanted with the property"; that "[Husband] ha[d] borrowed against the property without the [C]hildren's knowledge or consent"; that had [Husband] intended a present transfer by the 1990 quitclaim deed, "his use of the property without the participation of the other joint ten-

riod determined that "the farm, including the water and all the farm equipment and other personal property on the farm is marital property." He then divided the marital assets by ordering Wife to sell the farm, use the proceeds to satisfy any debts, and then split any remainder equally with Husband. With respect to Husband's statute of limitations claim, Judge Henriod found that Husband's "conduct from [the time of the deed] to the present led [Wife] to believe that the 1990 quitclaim deed did not constitute a transfer at that time." Therefore, he concluded that Husband was "estopped from claiming that the 1990 quitclaim deed was a valid transfer, or that either the legal principle of laches or the statute of limitations appli[ed] to [Wife's] claim for an interest in the [farm]." Finally, Judge Henriod ordered that Wife be awarded her attorney fees "because of [Husband's] conduct in attempting to prevent her from receiving a fair share of marital assets." Husband appeals Judge Henriod's Order and the related findings of fact and conclusions of law.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 Husband argues that Judge Henriod erred in concluding that the statute of limitations did not bar Wife's claim for an interest in the farm. "The applicability of a statute of limitations ... [is] a question of law, which we review for correctness." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 18, 108 P.3d 741 (internal quotation marks omitted).

■ ¶ 10 Husband next challenges Judge Henriod's conclusion that the 1990 quitclaim deed was invalid. At trial, "[a] party attacking the validity of a written instrument must do so by clear and convincing evidence." *Baker v. Pattee*, 684 P.2d 632,

634 (Utah 1984). However, while we review questions of law for correctness on appeal, *see generally Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991) (recognizing that whether parties conveyed title to property is a matter of law), we "will disturb the findings of fact in equity cases only where the evidence clearly preponderates against them," *Baker*, 684 P.2d at 634.

■ ¶ 11 Husband also argues that it was error to award Wife attorney fees in the second trial. "Both the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion." *Arnold v. Arnold*, 2008 UT App 17, ¶ 11, 177 P.3d 89 (internal quotation marks omitted). However, any underlying legal questions are reviewed for correctness. *See Connell v. Connell*, 2010 UT App 139, ¶ 6, 233 P.3d 836; *Boyer v. Boyer*, 2008 UT App 138, ¶ 13, 183 P.3d 1068 ("Whether attorney fees are recoverable in an action is a question of law, which is reviewed for correctness." (internal quotation marks omitted)).

## ANALYSIS

I. Because Husband Concealed His Present Intent To Transfer the Farm, the Discovery Rule Tolled Any Statute of Limitations Applicable to Wife's Claim Until the Time of the Second Trial.

■ ¶ 12 Husband asserts that the seven-year statute of limitations in Utah Code section 78B–2–207, *see* Utah Code Ann. § 78B–2–207 (2008), barred Wife's claim that the farm was part of the marital estate. In response, Wife contends that she did not bring a quiet title action and therefore section 78B–2–207 is inapplicable. We conclude that even if the quiet title statute of limitations was applicable, it was tolled.[4]

---

ants would have violated Utah law"; and that "[Husband] made it clear he was following the advice of a relative and did not understand what the legal effect of the transfer would be with respect to property taxes or inheritance taxes and in fact it appeared that what understanding he d[id] have [wa]s directly contrary to the actual effect that said transfer would have had."

4. Although Judge Henriod concluded that Husband was "estopped" from raising a statute of limitations defense, we interpret that ruling as a

determination that the statute of limitations was tolled. Even if Judge Henriod had not concluded that the statute of limitations had been tolled, we may affirm on that ground based on his findings of fact. *See Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158 ("[A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record." (emphasis and internal quotation marks omitted)).

¶ 13 Based on evidence at the second trial, Judge Henriod found,

> [Husband's] control of the property included use of the land, borrowing against the land and keeping all of the proceeds, attempts to sell the land, and during this conduct from 1989 to the present he led [Wife] to believe that the 1990 quitclaim deed did not constitute a transfer at that time and by his conduct he is therefore estopped from claiming that the 1990 quitclaim was a valid transfer, or that either the legal principle of laches or the statute of limitations applies to [Wife's] claim for an interest in the property.

Because Husband has not adequately challenged the finding that he led Wife to believe that the 1990 quitclaim deed was not a valid transfer at that time, we accept it and conclude that any statute of limitations applicable to Wife's claim was tolled until the time of the second trial. "To challenge a factual finding, an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below." *Ostermiller v. Ostermiller*, 2010 UT 43, ¶ 20, 233 P.3d 489 (internal quotation marks omitted). In marshaling the evidence, "[a]ppellants cannot merely present carefully selected facts and excerpts from the record in support of their position." *Id.* "[A]ppellants must present the evidence in a light most favorable to the trial court, and not attempt to construe the evidence in a light favorable to their case." *Id.*

¶ 14 Husband has not even attempted to satisfy this burden. Instead, he merely reargues the version of facts he asserted at trial, claiming that he did have the present intent to transfer the property to the Children at the time he executed the 1990 quitclaim deed, that he did it for "favorable property tax and inheritance tax purposes,"

and that the Children's ownership was shown by the Children's involvement on the farm over the years. Husband wholly fails to address the evidence Judge Henriod found persuasive in determining that Husband had no present intent to transfer when he executed the 1990 quitclaim deed. For instance, Husband borrowed against the farm without the consent or knowledge of all of the Children, and, at times, even over their objections. And the Children never shared in the profits or tax deductions available due to losses from the farm. Furthermore, Husband fails to address Judge Henriod's finding that Wife's testimony was credible, but that Husband's testimony "was intentionally evasive and dishonest, and not credible in any way."[5] The trial court has an advantaged position in assessing the credibility of witnesses and we will not disturb its determination of that issue on appeal.[6] *See Finlayson v. Finlayson*, 874 P.2d 843, 848 (Utah Ct. App.1994); *see also Lefavi v. Bertoch*, 2000 UT App 5, ¶ 20, 994 P.2d 817 ("The trial court is in the best position to assess the credibility of witnesses and to derive a sense of the proceedings as a whole, something an appellate court cannot hope to garner from a cold record." (internal quotation marks omitted)). Therefore, Husband has failed to meet his marshaling burden, and "'we assume that the record supports the findings of the trial court.'" *Moon v. Moon*, 1999 UT App 12, ¶ 24, 973 P.2d 431 (quoting *Wade v. Stangl*, 869 P.2d 9, 12 (Utah Ct.App.1994)).

¶ 15 Husband also challenges Judge Henriod's legal conclusion that the statute of limitations did not apply to Wife's claim that the 1990 quitclaim deed was invalid and that the farm was part of the marital estate. While Husband characterizes Wife's claim to one-half of the marital estate as a quiet title action, we need not classify Wife's claim because any statute of limitations applicable to her claim would be tolled by the discovery

---

5. Judge Henriod also found that the Children's testimony "was not helpful with respect to the resolution of the issue before the Court."

6. During the second trial, Judge Henriod admonished Husband, stating, "You, sir, are one of the most evasive and dishonest people I've ever heard testify on the stand." The record is replete with other incidents of Husband's inappropriate behavior, including an attempt to qualify his promise to tell the truth when first sworn as a witness; refusal to answer questions posed by Wife's attorney; arguing with counsel during cross-examination; and engaging in numerous courtroom outbursts, including leaving the witness stand during cross-examination.

rule. In *In re Hoopiiaina Trust*, 2006 UT 53, 144 P.3d 1129, the Utah Supreme Court explained that "all actions, whether legal or equitable, are subject to a statute of limitations in Utah." *Id.* ¶ 26. However, the supreme court then noted,

> While a statute of limitations generally begins running when a plaintiff has a completed cause of action, the discovery rule may nonetheless operate to toll a statute of limitations until the time at which a party discovered or reasonably could have discovered "facts forming the basis for the cause of action."

*Id.* ¶ 35 (quoting *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 21, 108 P.3d 741). Such a discovery rule can either be statutory or equitable in nature, *see id.*, either of which may apply to Wife's claim.

¶ 16 A statutory discovery rule applies where the statute itself "mandates application of the discovery rule." *Id.* (internal quotation marks omitted). Husband broadly contends that Wife's claim that the 1990 quitclaim deed was an invalid and fraudulent transfer is barred by the seven-year statute of limitations for quiet title actions. *See* Utah Code Ann. § 78B–2–207. However, fraud claims are generally governed by the three-year statute of limitations contained in Utah Code section 78B–2–305(3). *See id.* § 78B–2–305(3). That statute of limitations includes a statutory discovery rule, providing that "the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud." *Id.; see also In re Hoopiiaina*, 2006 UT 53, ¶ 24, 144 P.3d 1129 (clarifying that if a party is seeking relief that requires "the cancellation of a deed for fraud or mistake, he must bring his quiet title action within the period provided by law for an action based on that ground" (alteration and internal quotation marks

omitted)); *Davidsen v. Salt Lake City*, 95 Utah 347, 81 P.2d 374, 376–77 (1938) (concluding that three-year statute of limitations for fraud applied in action where grantor not in possession sought cancellation of deed on the basis of fraud or mistake). Based on Judge Henriod's unchallenged finding that Husband concealed his intent to transfer the farm until the second trial in 2009, Wife asserted her claim of fraud well within the three-year statute of limitations.

¶ 17 Furthermore, even if no statutory discovery rule applied,

> [t]here are two situations in which an equitable discovery rule will operate to toll a statute of limitations: (1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust.

*In re Hoopiiaina*, 2006 UT 53, ¶ 35, 144 P.3d 1129 (internal quotation marks omitted). "Under the concealment version of the equitable discovery rule," the statute of limitations will be tolled if the party seeking the protection "demonstrates that he neither discovered nor reasonably should have discovered the facts underlying the cause of action before the limitations period expired due to the [other party's] concealment." *Id.* ¶ 36 (internal quotation marks omitted). Again, because Judge Henriod found that Husband concealed from Wife his intent that the 1990 quitclaim deed constitute an actual transfer of the farm at that time, the concealment version of the equitable discovery rule would operate to toll the statute of limitations until 2009. Therefore, under any applicable statute of limitations, Wife asserted her interest in the farm within the allotted time.[7]

---

7. The fact that Wife was aware that the deed was recorded in 1990 does not undermine our determination that the statute of limitations was tolled because Wife was not apprised at that time of the "facts forming the basis for the cause of action," *see In re Hoopiiaina Trust*, 2006 UT 53, ¶ 35, 144 P.3d 1129. The trial court found that Husband affirmatively represented to Wife that the deed was executed and recorded for purposes other than the immediate transfer of title. Thus, Wife did not learn of her cause of action until the second trial when Husband first claimed that he had intended all along to transfer the property to the Children in 1990. Therefore, the statute of limitations, even if applicable, was not triggered until that time. *Cf. Baker v. Pattee*, 684 P.2d 632, 635 (Utah 1984) (concluding that, despite a recorded deed, where grantor intends property to be held in trust, a statute of limitations would not be triggered "until the trustees affirmatively repudiate[] the trust"); *Rawlings v. Rawlings*, 2010 UT 52, ¶ 12 n. 5, 240 P.3d 754 (concluding

## II. The Trial Court Did Not Err in Determining that the 1990 Quitclaim Deed Was Invalid.

¶ 18 Husband next asserts that Judge Henriod erred in concluding that the 1990 quitclaim deed was invalid. "[A] conveyance is valid only upon delivery of a deed with present intent to transfer." *Baker v. Pattee*, 684 P.2d 632, 635 (Utah 1984). "A presumption of valid delivery arises where the deed has been executed and recorded, but such a presumption may be overcome by clear and convincing evidence to the contrary." *Id.* (citations omitted). The quitclaim deed was executed and recorded in 1990. However, in finding that Husband "did not intend to convey a present interest in the [farm]" when he "deeded [it] to [the Children] as joint tenants with himself," Judge Henriod set forth ample subsidiary findings supporting his decision, including the overwhelming evidence that Husband was in sole control of the property, borrowed against it repeatedly, and admitted that he executed the quitclaim deed for estate planning purposes. Husband does not adequately attack these findings of fact on appeal. *See Ostermiller*, 2010 UT 43, ¶ 20, 233 P.3d 489.

¶ 19 Consequently, we are not convinced that the evidence preponderates against Judge Henriod's finding that Husband did not have the present intent to transfer the farm when he executed the 1990 quitclaim deed. Therefore, we affirm the determination that the 1990 quitclaim deed was invalid.

## III. Because the Attorney Fee Award Is Not Adequately Supported, We Remand for the Trial Court to Enter Appropriate Findings of Fact and Conclusions of Law.

¶ 20 Husband also challenges Judge Henriod's decision to award Wife her attorney fees. In awarding the fees, Judge Henriod stated that "Wife is awarded her attorney fees in the minimum amount of $19,952.00 because of [Husband's] conduct in attempting to prevent her from receiving a fair share of the marital assets." However, Judge Henriod did not specifically identify the legal basis for his award of attorney fees to Wife. Therefore, we remand for the trial court to explain more fully the basis for, and to enter appropriate findings regarding, any award of attorney fees to Wife.[8]

¶ 21 Wife also requests her attorney fees on appeal. "Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 52, 176 P.3d 476 (internal quotation marks omitted). Wife has prevailed on appeal. Therefore, if the trial court determines on remand that attorney fees are appropriate, the trial court should also award Wife her reasonable attorney fees incurred on appeal. *See Williamson v. Williamson*, 1999 UT App 219, ¶ 14, 983 P.2d 1103.

## CONCLUSION

¶ 22 Because Husband has not adequately challenged the trial court's findings that he

---

that the statute of limitations was tolled until the grantee under a recorded deed "first made his siblings aware that he was treating the property as if he were the sole owner," rather than as holding it in trust for the benefit of all of the siblings).

8. For example, to award attorney fees to a party under Utah Code section 78B–5–825, "(1) the party must prevail, (2) the claim asserted by the opposing party must have been without merit, and (3) the claim must not have been brought or asserted in good faith." *Gallegos v. Lloyd*, 2008 UT App 40, ¶ 9, 178 P.3d 922 (quoting *Hermes Assocs. v. Park's Sportsman*, 813 P.2d 1221, 1224–25 (Utah Ct.App.1991)); *see also* Utah Code Ann. § 78B–5–825 (2008). In addition, a

finding of bad faith must be based on (1) the lack of an honest belief in the propriety of the conduct, (2) an attempt to take unconscionable advantage of another, or (3) an intent to hinder, delay, or defraud. *See Gallegos*, 2008 UT App 40, ¶ 15, 178 P.3d 922; *see also id.* ¶ 17 (affirming finding of bad faith where the trial court found that the party against whom fees were awarded "came to court and testified, in [the trial court's] opinion, totally without credibility" (internal quotation marks omitted)). The trial court must make separate determinations on whether the claim was without merit and whether it was not asserted in good faith. *See Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶¶ 9–12, 122 P.3d 556.

lacked the present intent to transfer when he executed the 1990 quitclaim deed and that he concealed any such intent until trial, we affirm the determination that the quitclaim deed was invalid, and conclude that any statute of limitations applicable to Wife's claim was tolled. We remand to the trial court to identify the basis of the attorney fee award and to enter appropriate findings of fact and conclusions of law. If, on remand, the trial court awards Wife attorney fees, it should also award Wife her reasonable attorney fees incurred on appeal.

¶ 23 WE CONCUR: GREGORY K. ORME and J. FREDERIC VOROS JR., Judges.