64 F.3d 669
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Alexander HERNANDEZ, Plaintiff-Appellant,
v.
STATE of New Mexico, Public Defender Department; Jacquelyn
Robins; Reginald Storment, individually and in his former
official capacity as District Defender of the Public
Defender Department of the State of New Mexico; Gloria
Mccary, individually and in her former official capacity as
Attorney for the Public Defender Department of the State of
New Mexico; Karen Converse, individually and in her
official capacity as Attorney for the Public Defender
Department of the State of New Mexico; David Eisenburg,
individually and in his official capacity as Attorney for
the Public Defender Department of the State of New Mexico;
Anthony Rivera; Ralph Oldenwald, individually and in his
official capacity as District Defender of the State of New
Mexico; Jerry Dickinson, individually and in his official
capacity as Hearing Officer for the Personnel Board of the
State of New Mexico; Andrew Lopez, also known as Andres
Lopez, individually and in his official capacity as Area
Director of the Equal Employment Opportunity Commission of
the United States Government in the State of New Mexico;
David W. Morris, individually and in his official capacity
as Investigator for the Equal Employment Opportunity
Commission of the United States Government in the State of
New Mexico; Sarah E. Alley, individually and in her
official capacity as Assistant Attorney General of the State
of New Mexico; Kennis Berard, individually and in his
official capacity as Administrative Law Judge for the State
Personnel Board of the State of New Mexico, Defendants-Appellees.
 No. 94-2287.
 United States Court of Appeals, Tenth Circuit.
 Aug. 16, 1995.
 
 Before MOORE, SETH, and EBEL, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant Alexander Hernandez brought an action against numerous state and federal defendants, claiming violations of his civil rights, employment discrimination, retaliation, and violations of several federal statutes. He appeals the district court's order dismissing some of his claims and granting summary judgment on the rest. Because the district court did not commit any legal errors, we affirm.
 
 
 3
 From September 1988 to November 23, 1990, Mr. Hernandez was employed as a legal liaison in the Albuquerque office of the New Mexico Public Defender Department. As Chief Public Defender, Jackie Robins supervised the entire department. Reginald Storment was in charge of the Albuquerque office, and Gloria McCary, Kari Converse, Anthony Rivera, David Eisenburg, and Ralph Odenwald were assistant public defenders at that office.
 
 
 4
 In January 1990, an incident occurred involving the use of a Metro court computer for unauthorized purposes. After investigation, Ed Martinez, an employee of the Metro Division, was placed on administrative leave, and was later transferred. On September 13, 1990, Mr. Hernandez wrote a memorandum to Reginald Storment, challenging his authority and fairness in conducting the investigation and in disciplining Martinez. The tone and content of Mr. Hernandez' memorandum were considered insubordinate and unprofessional, prompting a meeting between Jackie Robins, Mr. Hernandez, and the Deputy Public Defender. Mr. Hernandez was advised that he appeared to be on a collision course with Reginald Storment, and was offered a transfer with promotion to another office. Mr. Hernandez refused the transfer.
 
 
 5
 In September 1990, a female client of Kari Converse complained that Mr. Hernandez made improper suggestions to her during an interview. On September 21, 1990, Reginald Storment discussed this allegation with Mr. Hernandez. During the meeting, Mr. Hernandez informed Storment of a similar complaint made by another female client. The department investigated both complaints, but concluded that no action should be taken.
 
 
 6
 On October 10, 1990, Storment wrote Mr. Hernandez a memorandum warning him that any future reports of inappropriate conduct, if proven, would merit disciplinary sanctions. Also on October 10, 1990, Storment gave Mr. Hernandez a letter of reprimand for interfering with the Martinez disciplinary action, attempting to influence the investigation of the clients' complaints, and interfering with and disrupting office procedures. Mr. Hernandez responded with a memorandum, dated October 24, 1990, which was insulting and offensive in tone, and accused Storment of fabricating all of the described incidents. See R. II, doc. 56, exh. J A-1. The memorandum also contained a litany of accusations against other members of the Albuquerque office.
 
 
 7
 Mr. Hernandez had been in charge of the office soft drink machine since 1989. On October 17, 1990, Storment asked Mr. Hernandez for an accounting of the money from the soft drink fund. Mr. Hernandez immediately resigned from his soft drink duties and gave Storment the soft drink records. On October 25, 1990, Storment wrote a memorandum requesting an accounting and indicating that several hundred dollars appeared to be missing from the fund. Mr. Hernandez responded with a memorandum on October 29, 1990, which again was hostile, insulting, and insubordinate, accusing Storment of racism, and challenging his decisions in other unrelated incidents. No accounting of the soft drink funds was provided. See id., doc. 56, exh. J C-1.
 
 
 8
 Also in October 1990, an incident occurred in which Mr. Hernandez believed his parking pass had been cancelled. On October 18, 1990, Mr. Hernandez first confronted the office manager in an offensive manner and later wrote her a memorandum threatening an EEOC action.
 
 
 9
 On October 29, 1990, attorney Gloria McCary reported to Storment that two of her clients told her that Mr. Hernandez had counseled them to complain about her representation of them, and that he had assisted them in writing the complaints. This was considered insubordination and interference with the attorney-client relationship.
 
 
 10
 On October 31, 1990, Storment delivered to Mr. Hernandez a Notice of Contemplated Action specifying six grounds for removal, based on the incidents described above. Mr. Hernandez was placed on administrative leave and was given seven days to respond in writing or to request the opportunity for an oral response. See id. at doc. 56, exh. I. Mr. Hernandez responded with two written memoranda. On November 21, 1990, a Notice of Final Action was sent to Mr. Hernandez, terminating his employment on November 23, 1990.
 
 
 11
 Mr. Hernandez appealed his termination to the New Mexico Personnel Board (Board). Assistant Attorney General Sarah Alley represented the Public Defender Department before the Board. Hearing officer Kennis Berard was initially assigned to hear the case, but recused himself after Mr. Hernandez alleged that he was biased. Hearing officer Jerry Dickinson then presided over Mr. Hernandez' appeal.
 
 
 12
 After an extensive hearing, the Board upheld the termination on five of the six grounds. The Board concluded that Mr. Hernandez had failed to show that the action was taken because he was Hispanic or that his First Amendment rights were violated. According to both the State defendants and Mr. Hernandez, this decision has now been affirmed by the Second Judicial District Court of New Mexico and the New Mexico Court of Appeals. See State Defendants-Appellees' Br. at 16; see also Plaintiff-Appellant's Responding Br. at 9.
 
 
 13
 Meanwhile, Mr. Hernandez had filed a complaint with the Equal Employment Opportunity Commission (EEOC) regarding the October 10, 1990 letter of reprimand and an earlier denial of a promotion. EEOC employee David Norris investigated the complaint. In March 1993, EEOC Area Director Andres Lopez dismissed the charge, finding that neither the reprimand nor the denial of promotion could be attributed to Mr. Hernandez' national origin or to retaliation for advising a friend to file an EEOC charge.
 
 
 14
 Mr. Hernandez brought an action in the United States District Court for the District of New Mexico against twelve defendants, in both their official and individual capacities. The complaint alleged violations of 42 U.S.C.1983 and 1985, Title VII, and 18 U.S.C. 1001 and 1621. In a detailed Memorandum Opinion, the district court dismissed many of the claims and granted summary judgment on the rest. This appeal followed.
 
 
 15
 Many of Mr. Hernandez' claims were dismissed on the ground that the defendant was entitled to some form of immunity: Eleventh Amendment, absolute, or qualified. We review de novo a state's entitlement to immunity under the Eleventh Amendment. Powder River Basin Resource Council v. Babbitt, 54 F.3d 1477, 1483 (10th Cir.1995). Decisions regarding absolute and qualified immunity are reviewed under the de novo standard as well. Warner v. Grand County, 57 F.3d 962, 963 (10th Cir.1995)(qualified immunity); Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir.1994)(absolute immunity), cert. denied, 115 S.Ct. 1175 (1995). The district court's interpretations of federal statutes are also reviewed de novo. United States v. Diaz, 989 F.2d 391, 392 (10th Cir.1993).
 
 
 16
 The district court dismissed all claims, except those brought under Title VII, against the Public Defender Department and its employees in their official capacities, on the grounds that: (1) the state is immune under the Eleventh Amendment, and (2) the state is not a "person" under 1983 and 1985.[2] On appeal, Mr. Hernandez argues that his claims are not barred by the Eleventh Amendment pursuant to Kentucky v. Graham, 473 U.S. 159 (1985); that government officials can be held liable for deprivation of constitutional rights under Monroe v. Pape, 365 U.S. 167 (1961); and that governments are no longer immune from suit under 42 U.S.C.1983, pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).
 
 
 17
 Mr. Hernandez' arguments demonstrate a fundamental lack of understanding regarding the district court's rulings. The Eleventh Amendment does not bar all actions against state entities, but only damages actions against state entities brought in federal court. See Hess v. Port Auth. Trans-Hudson Corp., 115 S.Ct. 394, 400, 404 (1994)("The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals."). Moreover, while the Eleventh Amendment does not bar actions against state officials in their personal capacities, it does bar actions against state officials for damages in their official capacities. Graham, 473 U.S. at 169.
 
 
 18
 In addition, although local governments are considered "persons" that may be held liable for violating 42 U.S.C.1983, Monell, 436 U.S. at 690, the Supreme Court has held that "a State is not a 'person' within the meaning of 1983," Will v. Michigan Dep't of State Police, 491 U.S. 58, 65 (1989). The district court did not err, therefore, in dismissing all claims, except those brought under Title VII, against the Public Defender Department, and its employees in their official capacities.
 
 
 19
 The court granted summary judgment on all claims against hearing officers Dickinson and Berard on the ground that they were entitled to quasi-judicial immunity. There is no merit to Mr. Hernandez' argument that such immunity is forfeited upon the failure to comply with elementary principles of procedural due process. Stump v. Sparkman, 435 U.S. 349 (1978), in fact, rejects this very argument, holding that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Id. at 359. As all of the claims against the hearing officers arose out of their adjudicatory acts, the district court was correct in granting them quasi-judicial immunity. See Butz v. Economou, 438 U.S. 478, 512-14 (1978)(holding agency hearing examiners entitled to judicial immunity because their role was "functionally comparable" to that of judge); Atiya v. Salt Lake County, 988 F.2d 1013 (10th Cir.1993)(holding members of county career service council entitled to quasi-judicial immunity).
 
 
 20
 The court granted summary judgment in favor of the public defenders, in their individual capacities, on the 1983 and 1985 claims, based on qualified immunity. The court concluded that Mr. Hernandez was barred from showing that these defendants violated clearly established law or acted unreasonably, because New Mexico law would accord preclusive effect to the Personnel Board's findings that (1) Mr. Hernandez was not reprimanded or terminated because of his national origin, (2) the termination was for "good cause," and (3) Mr. Hernandez was not terminated for the exercise of protected speech.
 
 
 21
 Mr. Hernandez does not address the preclusive nature of the Board's findings, arguing instead that his evidence was sufficient to show that the termination was unjustified and that the Board was biased. We agree with the district court that New Mexico law permits the application of collateral estoppel to preclude relitigation of the reasons behind Mr. Hernandez' termination, and that his conclusory allegations of bias are insufficient to prevent application of the doctrine in this case. See Rex, Inc. v. Manufactured Hous. Comm., 892 P.2d 947, 951 (N.M.1995)(setting out prerequisites for applying collateral estoppel and noting that " 'administrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing' ")(quoting Shovelin v. Central N.M. Elec. Coop., Inc., 850 P.2d 996, 1001 (N.M.1993)); see also University of Tenn. v. Elliott, 478 U.S. 788, 799 (1986)(holding that in 1983 action, federal court must give preclusive effect to state administrative factfinding when state would do so). The public defenders, therefore, were entitled to qualified immunity on the 1983 and 1985 claims.
 
 
 22
 The district court decided Mr. Hernandez' Title VII claims on the merits, noting that the Personnel Board's findings would not preclude the Title VII claims because they had not been judicially reviewed. See Elliott, 478 U.S. at 794-96 (holding Congress did not intend unreviewed state administrative proceedings to preclude Title VII claims). Although the Board's findings have now been judicially reviewed and might support a conclusion that the Title VII claims are precluded, we agree that Mr. Hernandez' evidence was insufficient to create a factual dispute: (1) whether he was reprimanded or terminated because of his national origin, (2) whether he was reprimanded or terminated for advising someone to file an EEOC charge, or (3) whether the Public Defender Department's reasons were pretextual. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-04 (1973). Summary judgment, therefore, was appropriate on the Title VII claims against the Public Defender Department and its employees.
 
 
 23
 The district court dismissed all claims against EEOC defendants David Norris and Andres Lopez for lack of proper service within the 120-day period specified in Fed.R.Civ.P. 4. A dismissal for untimely service is reviewed for an abuse of discretion. Jones v. Frank, 973 F.2d 872, 872 (10th Cir.1992).
 
 
 24
 Mr. Hernandez argues that service was proper because he complied with Fed.R.Civ.P. 4 by delivering the summonses to the United States Marshals, and that he then had no control over how service was effected. "A pro se litigant is still obligated to follow the requirements of Fed.R.Civ.P. 4." DiCesare v. Stuart, 12 F.3d 973, 980 (10th Cir.1993). Mr. Hernandez cannot abdicate his responsibility for complying with the rules simply by delivering the summonses to the marshals.
 
 
 25
 Even if the marshals could be faulted for improper service initially, Mr. Hernandez was informed well within the 120-day period that service was defective, but took no action to correct the defect. We have held that no "good cause" exists when a pro se litigant is notified of defective service within the 120-day period and yet fails to correct the defect. Frank, 973 F.2d at 873-74. The district court, therefore, did not abuse its discretion in dismissing the action against Lopez and Norris.
 
 
 26
 Finally, Mr. Hernandez argues that the district court's incorrect application of federal law, permitting the defendants to violate his rights, demonstrated the court's overt bias. The fact that the district court disagreed with Mr. Hernandez' arguments and ruled against him, however, does not establish bias. See Christensen v. Ward, 916 F.2d 1462, 1466 (10th Cir.), cert. denied, 498 U.S. 999 (1990).
 
 
 27
 Mr. Hernandez' briefs do not discuss the district court's dismissal of the claims against defendants Eisenburg and Alley for failure to state a claim, its dismissal of the personal capacity claims against defendants Berard and Dickinson for lack of evidence, or its dismissal of the claims under 18 U.S.C. 1001 and 1621. Nevertheless, we have examined the record, and conclude that these rulings were correct as well.
 
 
 28
 The motion to proceed in forma pauperis is GRANTED and the judgment of the United States District Court for the District of New Mexico is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The district court recognized that the Eleventh Amendment did not bar Mr. Hernandez' Title VII claims because Congress has abrogated a state's immunity when such claims are brought against the state in its capacity as an employer. See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)